No. 78–5531.  CARMONA ET AL. *v.* WARD, CORRECTIONAL COMMISSIONER, ET AL.  C. A. 2d Cir.  Certiorari denied.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE POWELL joins, dissenting.

In 1973, New York enacted a comprehensive drug law which prescribes mandatory maximum life sentences and varying minimum terms of imprisonment for all class A narcotics felonies.  N. Y. Penal Law §§ 70.00 (2)(a), 70.00 (3)(a) (McKinney 1975).[1]  The Court today declines to consider whether two mandatory life sentences imposed under this statute, one for possession of an ounce of a substance containing cocaine, and the other for sale of 0.00455 of an ounce of a substance containing cocaine, constitute cruel and unusual punishment.

I

In 1975, petitioner Martha Carmona pleaded guilty to possession of an ounce of a substance containing cocaine in viola-

---

[1] Section 70.00 (2)(a) provides in part: "For a class A felony the [maximum] term shall be life imprisonment."  The minimum terms that a court may impose vary depending on whether the felony is specified as A–I, A–II, or A–III.  Section 70.00 (3)(a) provides:

"(i) For a class A–I felony, such minimum period shall not be less than fifteen years nor more than twenty-five years.

"(ii) For a class A–II felony, such minimum period shall not be less than six years nor more than eight years four months.

"(iii) For a class A–III felony such minimum period shall not be less than one year nor more than eight years four months."

tion of N. Y. Penal Law § 220.18 (McKinney Supp. 1978).[2] The Appellate Division affirmed her conviction, and the New York Court of Appeals denied leave to appeal. *People* v. *Carmona*, 40 N. Y. 2d 1081, 360 N. E. 2d 965 (1976). She is currently serving a sentence of six years to life, the minimum possible for a § 220.18 violation under the 1973 statute. N. Y. Penal Law §§ 70.00 (2)(a), (3)(a)(ii) (McKinney 1975).[3] Prior to a series of events giving rise to the instant charges, petitioner Carmona had no criminal record except for one non-drug-related arrest 19 years earlier.[4]

Petitioner Roberta Fowler was convicted in February 1974, of selling 0.00455 of an ounce of a substance containing cocaine to an undercover agent for $20, in violation of N. Y. Penal Law § 220.39 (McKinney Supp. 1978).[5] The state trial court sentenced her to four years to life under §§ 70.00 (2)(a)

---

[2] Section 220.18 provides in part:

"A person is guilty of criminal possession of a controlled substance in the second degree when he knowingly and unlawfully possesses:

"1. one or more preparations, compounds, mixtures or substances of an aggregate weight of one ounce or more containing a narcotic drug . . . ."

Cocaine is classified as a narcotic drug. § 220.00 (7). N. Y. Pub. Health Law § 3306, Schedule II (a)(4) (McKinney Supp. 1978).

[3] Section 220.18 classifies criminal possession of a controlled substance in the second degree as an A–II felony. See n. 1, *supra*.

[4] Several months before her indictment in state court for the instant offense, Carmona was arrested on federal charges of conspiracy and possession of cocaine with intent to distribute and on state charges of selling heroin. In satisfaction of the federal charges, she pleaded guilty to one substantive count of possession and received a sentence of imprisonment for one year and special parole for three years, both to run concurrently with the state sentence. The other state charges were dismissed in return for Carmona's guilty plea to one count of possession of cocaine.

[5] Section 220.39 provides in part:

"A person is guilty of criminal sale of a controlled substance in the third degree when he knowingly and unlawfully sells:

"1. a narcotic drug . . . ."

and 70.00 (3)(a)(iii),[6] and the New York Court of Appeals sustained that penalty over her Eighth Amendment challenge, *sub nom. People* v. *Broadie,* 37 N. Y. 2d 100, 332 N. E. 2d 338, cert. denied, 423 U. S. 950 (1975). At the time of sentencing, Fowler, then age 20, had no prior record of possession or sale of narcotics, or of any violent criminal conduct, although she previously had been convicted of possession and use of drug paraphernalia, prostitution, and petit larceny.[7]

In 1975, Carmona petitioned the District Court for the Southern District of New York for a writ of habeas corpus under 28 U. S. C. § 2254, on the ground that the sentencing provision of the 1973 statute was unconstitutional as applied. A month later, Fowler intervened as a petitioner. After a hearing, the District Court held that petitioners' mandatory maximum life sentences were so "grossly out of proportion to the severity of [their] crime[s]" as to constitute cruel and unusual punishment. 436 F. Supp. 1153, 1164 (1977). Accordingly, the court ordered petitioners discharged at the end of their minimum terms unless the State imposed constitutionally appropriate maximum sentences within 90 days. *Id.,* at 1175.

A divided panel of the Court of Appeals for the Second Circuit reversed. Although agreeing in principle with the District Court that a sanction grossly disproportionate to the gravity of an offense would violate the Eighth Amendment, the majority concluded that petitioners' sentences were constitutional. 576 F. 2d 405 (1978).

II

Few legal principles are more firmly rooted in the Bill of Rights and its common-law antecedents than the requirement

---

[6] Section 220.39 specifies criminal sale of a controlled substance in the third degree as a class A–III felony. See n. 1, *supra.*

[7] Fowler's criminal record is set out in full in the District Court's opinion, 436 F. Supp. 1153, 1159 n. 13 (SDNY 1977).

of proportionality between a crime and its punishment. The precept that sanctions should be commensurate with the seriousness of a crime found expression in both the Magna Carta and the English Bill of Rights.[8] And this Court has long recognized that the Eighth Amendment embodies a similar prohibition against disproportionate punishment.

In *Weems* v. *United States,* 217 U. S. 349 (1910), the Court struck down as cruel and unusual punishment a sentence under the Philippine Code for falsification of a Government document. Although the sentence was excessive not merely in its length but in its conditions—15 years of hard labor in chains, with lifetime surveillance after release—the duration of the imprisonment and subsequent supervision plainly contributed to the Court's conclusion that "[s]uch penalties for such offenses amaze those who . . . believe that . . . punishment for crime should be graduated and proportioned to offense." *Id.,* at 366–367. In so ruling, the Court quoted with approval the Massachusetts Supreme Court's observation that imprisonment "for a long term of years might be so disproportionate to the offence as to constitute a cruel and unusual punishment." *Id.,* at 368, quoting *McDonald* v. *Commonwealth,* 173 Mass. 322, 328 (1899).

Applying the analysis set forth in *Weems,* this Court has invalidated punishments that were disproportionate to the nature of the offense charged, *Robinson* v. *California,* 370 U. S. 660 (1962) (imprisonment for the status of drug addiction), and to the penalties imposed in other jurisdictions, *Trop* v.

---

[8] Chapter 20, renumbered Chapter 14, of the Magna Carta states: "A free man shall not be amerced for a trivial offence, except in accordance with the degree of the offence; and for a serious offence he shall be amerced according to its gravity, saving his livelihood . . . ." J. Holt, Magna Carta 323 (1965). For a discussion of the evolution of the Cruel and Unusual Punishments Clause in the English Bill of Rights, see Granucci, "Nor Cruel and Unusual Punishments Inflicted:" The Original Meaning, 57 Calif. L. Rev. 839, 855–860 (1969).

*Dulles,* 356 U. S. 86 (1958) (plurality opinion) (denationalization for wartime desertion). Thus, while recognizing that the power to prescribe punishments rests in the first instance with the legislature, we have not abdicated our constitutional function to draw a meaning from the Eighth Amendment consonant with "the evolving standards of decency that mark the progress of a maturing society." *Id.,* at 101.

Most recently, in *Coker* v. *Georgia,* 433 U. S. 584 (1977), the Court refined the test for assessing Eighth Amendment challenges, concluding that

"a punishment is 'excessive' and unconstitutional if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Id.,* at 592.

In holding the Georgia death penalty for rape invalid on the latter ground, the Court followed the approach of *Weems,* focusing on the character of the crime, the punishment for the same offense in other jurisdictions, and the penalty for similar crimes in the same jurisdiction.

The Court of Appeals here purported to apply the principles enunciated in *Coker* and *Weems.* Whether it did so in fact is, in my judgment, open to serious question.

### III

Under *Coker,* the threshold inquiry concerns the character of the offense. In assessing the severity of petitioners' crimes, the Court of Appeals made the following observations:

"The crime [drug abuse] spawns is well recognized. Addicts turn to prostitution, larceny, robbery, burglary and assault to support their habits. . . .

"The entire system depends upon ultimate disposition by sellers such as [petitioners] here who . . . are, 'the crucial

link' in the pernicious cycle spawning the addiction which creates other sellers. We conclude that the legislature could only properly judge the severity of the crime involved by considering the well understood and undisputed operating procedures of the dirty business involved and its disastrous consequences." 576 F. 2d., at 412 (footnote and citation omitted).

This analysis is problematic for several reasons. Petitioners were convicted of selling a single dose of cocaine and of possessing one ounce of a substance containing cocaine. They were not, as the dissent pointed out, "wholesalers, importers, dealers or distributors of that drug or of heroin." *Id.*, at 423 (Oakes, J., dissenting).[9] Yet New York's 1973 statute precluded the judges who sentenced Carmona and Fowler from taking into account any gradations of culpability when imposing the maximum punishment.

To rationalize petitioners' sentences by invoking all evils attendant on or attributable to widespread drug trafficking is simply not compatible with a fundamental premise of the criminal justice system, that individuals are accountable only for their own criminal acts. Nor is it consistent with the proportionality principle implicit in the Eighth Amendment. As *Coker* suggests, a crime that is sometimes accompanied by

---

[9] The Court of Appeals suggested that petitioners were "not aided by the fact that their convictions were based on cocaine and not heroin. Cocaine is a dangerous drug that causes damaging psychological and physiological effects in its users." 576 F. 2d, at 412 n. 11. In support of that proposition, the court cited no findings by the District Court. Rather, the Court of Appeals relied on a law review article which notes that cocaine use "does not produce tolerance or physical dependence," McLaughlin, Cocaine: The History and Regulation of a Dangerous Drug, 58 Cornell L. Rev. 537, 553 (1973), and on an opinion of the Alaska Supreme Court which acknowledges that, "[w]hile cocaine has been anecdotally related to aggressive or criminal conduct, adequate evidence to assess its possible impact in these areas is absent." *State* v. *Erickson,* 574 P. 2d 1, 9 (1978).

collateral offenses cannot constitutionally be punished as if it were always so linked. That the rape in *Coker* occurred while the defendant was committing armed robbery did not alter the plurality's analysis for, "[a]lthough [rape] may be accompanied by another crime, rape by definition does not include the death of, or even the serious injury to another person." 433 U. S., at 598.[10]

Moreover, none of the collateral crimes to which the Court of Appeals adverted carry as severe a punishment as those currently at issue. In New York, the maximum prison term for first-degree robbery and burglary is 25 years, for first-degree assault it is 4½ to 15 years, and for prostitution, 3 months.[11] To justify a stringent penalty for an act on the assumption that the act may engender other crimes makes little sense when those other crimes carry less severe sanctions than the act itself. See 576 F. 2d, at 423 (Oakes, J., dissenting). In sum, by focusing on the corrosive social impact of drug trafficking in general, rather than on petitioners' actual—and clearly marginal—involvement in that enterprise, the Court of Appeals substantially overstated the gravity of the instant charges.

---

[10] Here there was no evidence causally linking petitioners' drug offenses to any violent collateral crimes. And it is questionable whether such linkage can be presumed. Even if the Court of Appeals could appropriately rely on a New Yorker Magazine article to establish that a substantial percentage of New York's prison inmates use drugs and that many of them turn to robbery or burglary to support their habits, see 576 F. 2d, at 412 n. 12, it cannot be presumed either that: (1) but for drugs, those defendants would not have committed crimes; or (2) cocaine sales have a significant causal relationship to robbery or burglary. See n. 9, *supra.* Indeed, one of the Court of Appeals' own sources noted that there is "no reliable scientific evidence linking cocaine usage to criminal conduct . . . ." *State* v. *Erickson, supra,* at 9.

[11] N. Y. Penal Law §§ 160.15, 70.00 (2) (b) (McKinney 1975); §§ 140.30, 70.00 (2) (b) (McKinney 1975); §§ 230.00 (McKinney Supp. 1978), 70.15 (2) (McKinney 1975).

### IV

When comparing petitioners' sentences with those prescribed for other crimes by New York, and for the same crime in other States, it is first necessary to clarify the precise nature of the penalty imposed. Although the Court of Appeals professed to acknowledge that the "major question on appeal is whether the mandatory maximum sentence of life imprisonment imposed on [petitioners] is unconstitutional," 576 F. 2d, at 408, it declined to analyze the sentences in terms of their maximum potential. Rather, the court discounted petitioners' penalties by the "probability of parole," *id.*, at 413, and considered the constitutionality of those lesser undefined sentences. This approach is analytically unsatisfying and inconsistent with the position taken by other courts that have considered the constitutionality of maximum life sentences.

Under New York law, the determination to grant parole and absolute discharge from parole is committed to the discretion of the Parole Board. Unless the parolee receives an absolute discharge, he remains in the legal custody of the State for the maximum term of his sentence and may be reincarcerated for violating any of the conditions which normally attach to the grant of parole. N. Y. Exec. Law § 259–i (2)(b) (McKinney Supp. 1978). Since the standard governing absolute discharge from parole, whether such termination would serve the "best interests of society," § 259–j, affords nearly limitless discretion to the Parole Board, petitioners could not claim any realistic expectation of release from legal custody prior to the termination of their maximum sentences. On similar reasoning, the New York Court of Appeals and the California Supreme Court have both evaluated Eighth Amendment claims by reference to the maximum terms the defendants might serve, notwithstanding the possibility of parole. *People* v. *Broadie,* 37 N. Y. 2d, at 110, 332 N. E. 2d, at 341; *In*

*re Lynch,* 8 Cal. 3d 410, 415–418, 503 P. 2d 921, 924–926 (1972) (en banc).[12]

Had the Court of Appeals evaluated petitioners' sentences in terms of their maximum potential, it might well have reached a different result. In New York, the only other crimes with mandatory life sentences are first- and second-degree murder, first-degree arson (intentional damage to an inhabited building by explosion) and first-degree kidnaping (abduction if the victim dies or the purpose is extortion).[13] Among those crimes carrying a substantially lighter maximum penalty than the $20 sale and possession of an ounce of cocaine involved here are:

(1) first-degree rape (sexual intercourse by force or with a female physically helpless or less than 11 years old) (6–25 years);

(2) first-degree manslaughter (homicide with intent to cause serious physical injury) (6–25 years);

(3) second-degree kidnaping (abduction) (6–25 years);

(4) second-degree arson (intentional damage to an inhabited building) (6–25 years);

---

[12] In *In re Lynch,* the California Supreme Court held that an indeterminate sentence must be evaluated as a maximum sentence of life imprisonment and that, as such, it was cruel and unusual punishment for a second offense of indecent exposure.

The Court of Appeals for the Fifth Circuit adopted a contrary approach in *Rummel* v. *Estelle,* 587 F. 2d 651 (1978) (en banc). At issue there was the constitutionality of a sentence imposed under the Texas Habitual Criminal Statute, which mandates life imprisonment upon a third felony conviction. Relying in part on the analysis of the Court of Appeals in this case, the en banc majority upheld the sentence, after taking into consideration the possibility of parole. *Id.,* at 659. The dissent, in which six judges joined, refused to discount the defendant's sentence by "a statistical possibility of clemency, an unenforceable hope that he may someday benefit from the grace of a parole board." *Id.,* at 668. (Clark, J., dissenting) (footnote omitted). That another Circuit has narrowly divided over a question of critical significance for this case is, in my judgment, further reason for granting review.

[13] N. Y. Penal Law §§ 125.27, 125.25, 150.20, 135.25 (McKinney 1975).

(5) first-degree robbery or burglary (armed) (6–25 years); and

(6) first-degree assault (injury with intent to cause disfigurement or serious physical injury) (4½–15 years).[14]

Just as the plurality in *Coker* found it "difficult to accept the notion . . . that the rapist . . . should be punished more heavily than the deliberate killer," 433 U. S., at 600, so, too, I find it difficult to accept the concept that the sale or possession of a small amount of cocaine should be penalized more severely than manslaughter or forcible rape.

Compared with the punishment for similar offenses in other jurisdictions, New York's drug law is unique in its severity. As both the District Court and the dissent in the Court of Appeals painstakingly demonstrated, no other State prescribes life sentences for the crimes involved here:

> "Indeed, only six states have statutes permitting a court to consider imposition of a life sentence on a first felony offender. The most common maximum permitted is between ten and twenty years and not one of the thirty-four states in this range *requires* imposition of the maximum term. Neither Fowler nor Carmona would have faced a mandatory sentence of life imprisonment under the law of any other state. As for Carmona, in thirty-one states the *maximum* penalty provided by law is less than the *minimum* sentence which she is serving." 576 F. 2d, at 424 (footnotes omitted).

Under federal drug laws, Carmona, if charged as a first offender with simple possession, could have received no more than one year of imprisonment and/or a $5,000 fine, 21 U. S. C. § 844 (a).[15] Fowler's sale of narcotics, as a first offense, would have

---

[14] The crimes are defined in N. Y. Penal Law §§ 130.35, 125.20, 135.20, 150.15, 160.15, 140.30, 120.10 (McKinney 1975). The penalties are set forth in §§ 70.02 (3)(a), (b) (McKinney Supp. 1978).

[15] If convicted of possession as a second offender, Carmona would have been subject to no more than two years' imprisonment and a $10,000

been punishable by probation or incarceration for up to 15 years and/or a fine of up to $25,000, coupled with a mandatory special parole term of at least 3 years. 21 U. S. C. § 841 (b)(1)(A).

Although acknowledging that the penalties under the 1973 New York law are harsher than those in any other jurisdiction, the Court of Appeals justified the disparity on the ground that New York City "houses more than half of all the addicts in the entire United States." 576 F. 2d, at 415. There was no finding to that effect by the District Court. Rather, the majority relied on *People* v. *Broadie,* 37 N. Y. 2d, at 116, 332 N. E. 2d, at 345, which in turn drew upon an estimate in E. Brecher and the Editors of Consumer Reports, Licit and Illicit Drugs 72 (1972). Current evidence, however, indicates that New York City has no more "epidemic" a drug problem than a number of other major metropolitan areas. A study by the National Institute on Drug Abuse reveals that in 1973, the year the statute was passed, Los Angeles, Miami, Detroit, Phoenix, San Diego, and San Francisco all had more heroin addicts per capita than New York City. Person, Retka, & Woodward, A Method for Estimating Heroin Use Prevalence, NIDA Technical Paper 8 (1977).[16]

Moreover, even granting that New York has a greater concentration of drug abuse than other States, this does not of itself justify the punishments at issue here. Due to a variety

---

fine. 21 U. S. C. § 844 (a). Had she been convicted of possession with intent to sell, the maximum penalty for a first offense would have been 15 years' imprisonment, a $25,000 fine, and a special parole term of at least 3 years; for a second offense, it would have been 30 years, $50,000, and at least 6 years' special parole. 21 U. S. C. § 841 (b)(1)(A). Only if she were found guilty of engaging in a "continuing criminal enterprise" in concert with at least five others could she have received a life sentence. 21 U. S. C. § 848.

[16] The report's latest annual figures, those for 1975, reflect that San Francisco, Los Angeles, Phoenix, Detroit, Chicago, San Diego, and San Antonio have a higher heroin addict per capita ranking than New York City. Person, Retka, & Woodward, at 8.

of geographic, demographic, and socio-economic factors, New York has more than its fair share of motor vehicle theft and larceny,[17] but this misfortune could not insulate Draconian penalties for such offenses from constitutional challenge. However serious its narcotics problem, New York cannot constitutionally treat those with peripheral involvement in drug trafficking as if they were responsible for the problem in its entirety.

Throughout its opinion, the Court of Appeals emphasized the need for broad deference to the legislature's judgment of how best to deal with a social phenomenon alarming in its current proportions. I do not disagree. It is axiomatic that this Court should approach Eighth Amendment challenges with caution, lest it become "under the aegis of the Cruel and Unusual Punishments Clause, the ultimate arbiter of the standards of criminal responsibility . . . throughout the country." *Powell* v. *Texas,* 392 U. S. 514, 533 (1968) (plurality opinion). But neither should the Court abdicate the function conferred by the Eighth Amendment, to determine whether application of a given legislative judgment results in punishment grossly out of proportion to specific offenses. I decline to join the Court in its abdication here.

Accordingly, I would grant the petition for certiorari and set the case for argument.

---

[17] See U. S. Dept. of Justice, FBI Uniform Crime Reports, Crime in the United States 1977, Table 4 (1978).