Opinions of the Justices to the
House of Representatives.

*Constitutional Law*, Cruel and unusual punishment. *Due Process of
Law*, Vagueness of statute. *Narcotic Drugs*.

The use of the term "street value" in proposed legislation imposing a
    mandatory minimum prison sentence on any person who knowing-
    ly or intentionally manufactures, distributes, dispenses or possesses
    with intent to distribute certain controlled substances having a
    street value in excess of $25,000 would not render the legislation
    unconstitutionally vague on its face. [826-829]
The sentencing provisions of proposed legislation imposing a twenty-
    five year minimum sentence on any person who knowingly or inten-
    tionally manufactures, distributes, dispenses or possesses with in-
    tent to distribute certain controlled substances having a street
    value in excess of $25,000 or imposing a mandatory sentence of one
    year for each $1,000 in illegal sales value represented by such
    controlled substance would not, solely on their face, violate either
    the Eighth Amendment to the United States Constitution or art. 26
    of the Massachusetts Declaration of Rights. [829-833] LIACOS, J.,
    with whom ABRAMS, J., joined, dissenting.

On July 6, 1979, the Justices submitted the following
answers to questions propounded to them by the House of
Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial
Court respectfully submit their answers to the questions
set forth in an order adopted by the House of Representa-
tives on May 21, 1979, and transmitted to us on May 23,
1979. The order recites that certain bills are pending
before the General Court, identified as Senate No. 777,
Senate No. 813, Senate No. 814, and House No. 507, all
of which provide for mandatory prison sentences for ma-

jor drug dealers, and that grave doubts exist as to their
constitutionality if enacted into law. Copies of the bills
were transmitted to us with the order. Typical of these
bills is Senate No. 777, which would amend G. L. c. 94C,
§ 32, by adding the following paragraph: "Notwithstand-
ing any other penalty provision of this section, except as
authorized by this chapter, whoever knowingly or inten-
tionally manufactures, distributes, dispenses or possesses
with intent to distribute a controlled substance in Classes
A to D, inclusive, of section thirty-one in an amount hav-
ing a street value in excess of twenty-five thousand dol-
lars in violation of this section shall be punished by im-
prisonment in the state prison for not less than
twenty-five years. Any sentence so imposed shall not be
suspended, nor shall any person so convicted be eligible
for probation, parole or furlough or receive any deduction
from his sentence for good conduct. Prosecution under
this section shall neither be continued without a finding
nor placed on file by the court." The texts of the other
bills are reprinted in the margin.[1]

---

[1] Senate No. 813—"Section 32 of chapter 94C of the General Laws,
as appearing in section 1 of chapter 1071 of the acts of 1971, is hereby
amended by adding the following paragraph:—Notwithstanding any
other penalty provisions of this section, which shall remain in full
effect, whoever, except as authorized by this chapter, knowingly or
intentionally manufactures, distributes, dispenses or possesses with
intent to distribute a controlled substance in classes A to D, inclusive,
of section thirty-one in an amount having a sales value (street value)
in excess of twenty-five thousand dollars shall be punished by impris-
onment in the state prison for not less than twenty-five years. Any
sentence so imposed shall not be suspended nor shall any person so
convicted be eligible for probation, parole or furlough or receive any
deduction from his sentence for good conduct. Prosecution under this
section shall neither be continued without a finding nor placed on file
by the court."

Senate No. 814—"Chapter 94C of the General Laws is hereby
amended by inserting after section 32, the following section:—*Section
32A.* Any person who sells or possesses with intent to sell a controlled
substance as listed in section thirty-two shall be punished by a manda-
tory imprisonment of one year for each one thousand dollars in illegal
sales value (street value) such substance represents. Any sentence so
imposed shall not be suspended nor shall any person so convicted be

Two questions are presented to us:

"1. Would the enactment of Senate, No. 777, Senate, No. 813, Senate, No. 814, and House, No. 507 be unconstitutionally vague, as to the definition of 'sales value (street value) in excess of twenty-five thousand dollars'?"

"2. Would the enactment of said bills result in cruel and [sic] unusual punishment in violation of Article XXVI of the Massachusetts Declaration of Rights,[2] in that Senate, No. 777 prescribes a penalty of a twenty-five year mandatory imprisonment with no probation, parole, furlough, or reduction of

---

eligible for probation, parole or furlough or receive any deduction from his sentence for good conduct. Prosecution under this section shall neither be continued without a finding nor placed on file by the court."

House No. 507—"Section 32 of chapter 94C of the General Laws, as appearing in section 1 of chapter 1071 of the acts of 1971, is hereby amended by adding the following three paragraphs:—Except as authorized by this chapter, no person shall knowingly or intentionally manufacture, distribute, dispense, or possess with intent to manufacture, distribute or dispense a controlled substance; or create, distribute, dispense or possess with intent to distribute or dispense a counterfeit substance.

"Whoever over the age of twenty one years who may be deemed a major dealer, importer or distributor and violates any provision of this section relative to a controlled substance in Class A through D of section thirty one shall be punished by imprisonment for not less than twenty five years. Any sentence so imposed shall not be suspended, nor shall any person so convicted be eligible for probation, parole or furlough or receive any deduction from his sentence for good conduct. Prosecution under this section shall neither be continued without a finding nor placed on file.

"For the purposes of this section, 'a major dealer, importer or distributor' shall be one who knowingly or intentionally manufactures, distributes or dispenses a controlled substance in Class A–D of section thirty-one in an amount having a value in excess of twenty five thousand dollars."

[2] We interpret the question to ask whether the bills, if enacted, would violate either the "cruel and unusual" punishment clause of the Eighth Amendment to the United States Constitution or the corresponding article of our Declaration of Rights (art. 26), which refers to "cruel or unusual punishment," see *Commonwealth* v. *O'Neal*, 369 Mass. 242, 246-247 (1975) (Tauro, C.J., concurring).

sentence for good conduct; Senate, No. 813 which provides for a penalty of a twenty-five year mandatory imprisonment with no probation, parole, furlough or reduction of sentence for good conduct; Senate, No. 814 which provides for a mandatory sentence of one year for each one thousand dollars in illegal sales value which is in possession of the defendant at the time of arrest, without probation, parole, furlough, or deduction of sentence for good conduct; and House, No. 507 which provides a penalty of a twenty-five year mandatory imprisonment with no probation, parole, or furlough or any reduction from his sentence for good conduct?"

Responding to our invitation for briefs from interested persons, the Massachusetts Trial Lawyers Association, the National Lawyers Guild, the Massachusetts Bar Association joined by the Massachusetts Defenders Committee, and the Civil Liberties Union of Massachusetts joined by the Massachusetts Association of Criminal Defense Lawyers, have argued that the questions should be answered in the affirmative.

We answer both questions in the negative. In so responding, we, of course, make no comment as to the wisdom of the proposed legislation or whether it would tend to derogate from the even-handed administration of justice. Compare *Commonwealth* v. *Jackson*, 369 Mass. 904, 908 (1976). Also, in so responding, we point out that our views on these issues are based solely on a facial examination of the proposed legislation, and that, even as to facial constitutionality, our examination is confined to the two narrow questions submitted to us. Thus, for example, we do not indicate any other opinion, although certain briefs filed with us urged that we do so, regarding the bills' constitutionality under the due process or equal protection clauses of the Fourteenth Amendment to the United States Constitution.

Furthermore, we do not foreclose arguments by defendants that the proposed statute is unconstitutional as applied in specific cases. Hence, we do not preclude the

possibility that in particular instances a defendant's inability to obtain expert testimony regarding the "street value" of drugs linked to him may be a basis for relief under the Sixth Amendment. Indeed, it may even be possible that, on the evidence in particular cases, some of the drugs presently included within the reach of the proposed criminal statute are not susceptible to readily computable "street values." Also, we observe that all bills, except Senate No. 814, are unclear as to whether cumulative events (such as successive sales or possessions) may be aggregated in order to subject a defendant to the mandatory penalty provisions. We offer no opinion on these and other problems that might arise if the legislative proposals are enacted.

1. *Vagueness.* It is a central tenet of our constitutional law that, as a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden should be deemed void for vagueness.[3] *Colautti* v. *Franklin*, 439 U.S. 379, 390-391 (1979). *Commonwealth* v. *Bohmer*, 374 Mass. 368, 371-372 (1978). *Commonwealth* v. *Gallant*, 373 Mass. 577, 579-580 (1977). *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). *Commonwealth* v. *Slome*, 321 Mass. 713, 715 (1947). Cf. *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 1)*, 374 Mass. 547, 552-553 (1978), appeal dismissed, 439 U.S. 803 (1978). Thus, if the term "street value" were to appear so ambiguous as to impose a substantial cloud on the definition of the crime the Legislature was attempting to delimit, it would be our duty to declare the proposed enactments

---

[3] A law may also be judged void for vagueness if "it encourages arbitrary and erratic arrests and convictions." *Papachristou* v. *Jacksonville*, 405 U.S. 156, 162 (1972). And where uncertainty engendered by a criminal statute threatens to restrain the exercise of constitutionally protected rights, judicial relief is particularly appropriate. *Smith* v. *Goguen*, 415 U.S. 566, 573 (1974). *Grayned* v. *Rockford*, 408 U.S. 104, 109 (1972). *Keyishian* v. *Board of Regents of the Univ. of N.Y.*, 385 U.S. 589, 603-604 (1967). *Revere* v. *Aucella*, 369 Mass. 138 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett*, 429 U.S. 877 (1976).

invalid. A facial examination of the intended language here, however, reveals no such imprecision. We discern no reason at this time to pronounce these bills infirm on account of vagueness.

It is appropriate to restate our understanding of the requirement that criminal conduct must be delineated with a reasonable degree of definiteness. *Commonwealth* v. *Reilly*, 248 Mass. 1 (1924). *Commonwealth* v. *Pentz*, 247 Mass. 500 (1924). Fundamental is the premise that a penal statute must be sufficiently well-expressed that those who may be subject to its penalties should not be forced to guess at its meaning. *McQuade* v. *New York Cent. R.R.*, 320 Mass. 35, 40 (1946). Yet, a statute does not fail to satisfy constitutional requirements merely because it uses general terms. *Jaquith* v. *Commonwealth*, 331 Mass. 439, 442 (1954). If the language which is challenged as being vague conveys a definite warning of proscribed conduct—when measured by common understanding and practices—it is constitutionally adequate. *Commonwealth* v. *Jarrett*, 359 Mass. 491, 496-497 (1971). Language of statutes, criminal statutes included, may also be given definite meaning when viewed in light of common law interpretations or against the background of the terms' statutory history. *Commonwealth* v. *Balthazar*, 366 Mass. 298, 300 (1974). *Commonwealth* v. *Brasher*, 359 Mass. 550, 553 (1971).

In short, the constitutional burden imposed by the vagueness doctrine requires simply that the statute be drafted in such form as to present "ascertainable standards of guilt." *Winters* v. *New York*, 333 U.S. 507, 515 (1948). *United States* v. *Herrera*, 584 F.2d 1137, 1149 (2d Cir. 1978). The fact that close questions may arise in determining guilt does not render the statute unconstitutionally vague. *United States* v. *Douglass*, 579 F.2d 545, 548 (9th Cir. 1978).

Approaching the specific question asked us by the House of Representatives, we note initially that none of the bills makes criminal conduct that has been heretofore

lawfully permitted. General Laws c. 94C, § 32, as it currently stands, already punishes the unauthorized manufacture, distribution, dispensing, or possession with intent to distribute, of drugs in Classes A through D; notably, in certain instances offenders may be sentenced to imprisonment in the State prison for a term of twenty-five years and given a fine of $30,000. If enacted, however, the proposed legislation would increase greatly the penalty for many § 32 offenders now subject to considerably less stringent punishments.

As the proposed legislation is presented to us, we do not discern that any of the bills is facially vague. The expression "street value," we think, possesses a clear meaning, one that has been implicitly recognized in common speech as well as in numerous judicial decisions both in this Commonwealth and elsewhere.[4] When used in the context of the sale of contraband, particularly narcotics, "street value" refers to the reasonable price that can be obtained through the sale to ultimate users.[5] The term is well-known shorthand for "retail" value, see *United States* v. *Hollman*, 541 F.2d 196, 200 (8th Cir. 1976), an amount fully incorporating the cost of middlemen. It is to be distinguished from "wholesale value," a lesser amount which reflects the absence of certain of the transaction

---

[4] See, e.g., *Commonwealth* v. *Rivera*, 6 Mass. App. Ct. 947 (1978); *Commonwealth* v. *Baltrop*, 2 Mass. App. Ct. 819, 820 (1974); *United States* v. *Bycer*, 593 F.2d 549, 551 (3d Cir. 1979); *United States* v. *Muckenthaler*, 584 F.2d 240, 247 n.3 (8th Cir. 1978); *United States* v. *Restrepo-Granda*, 575 F.3d 524, 527 (5th Cir.), cert. denied, 439 U.S. 935 (1978); *United States* v. *Schmidt*, 573 F.2d 1057, 1061 (9th Cir.), cert. denied, 439 U.S. 881 (1978); *United States* v. *Herron*, 567 F.2d 510, 512 (D.C. Cir. 1977); *United States* v. *Reese*, 561 F.2d 894, 897 (D.C. Cir. 1977); *Taylor* v. *United States*, 550 F.2d 983, 985 (4th Cir. 1977); *People* v. *Dickson*, 91 Cal. App. 3d 409, 413-414 (1979); *Peasley* v. *State*, 83 Wis. 2d 224, 232 (1978).

[5] When used to refer to the sale of stolen noncontraband goods, "street value" may have a somewhat different meaning. Because these goods are legally available, the "street value" of such items will often be lower than the regular retail prices. See *United States* v. *Watson*, 570 F.2d 282, 283 (8th Cir. 1978).

costs that figure into "street" or "retail" value. See *United States* v. *Jackson*, 588 F.2d 1046, 1050 (5th Cir. 1979); *Guidi* v. *Superior Court*, 10 Cal. 3d 1, 9 (1973); *People* v. *Nowak*, 46 App. Div. 2d 469, 470 (N.Y. 1975). Therefore, viewing the bills for facial vagueness, we harbor little doubt that those subject to the proposed law will be capable of understanding the circumstances under which it is to apply.[6]

To be sure, the "street value" or "retail value" of a given quantity of narcotics is not a static amount. Street prices of drugs, like those of other goods, vary in accordance with prevailing market conditions, see *United States* v. *Green*, 548 F.2d 1261, 1266 (6th Cir. 1977), and proof of "street value" will necessarily be a critical element of the prosecution's case. But so long as the defendant is not restricted at trial from challenging the value the prosecution ascribes to the narcotics at issue, we see no constitutional barrier to the use of this shorthand expression in the proposed enactments.

2. *Cruel and unusual punishment.* The second question we address is whether the bills' mandatory sentencing provisions—including the requirement that a twenty-five year mandatory sentence in State prison be imposed on persons found manufacturing, distributing, dispensing, or possessing with intent to distribute, certain narcotics having a street value in excess of $25,000—are unconstitutional under the Eighth Amendment to the United States Constitution or under art. 26 of the Commonwealth's Declaration of Rights as "cruel and unusual punishment."

For over three-quarters of a century this court has recognized that "imprisonment in the state prison for a long term of years might be so disproportionate to the

---

[6] We observe, however, that House No. 507 uses the word "value" rather than the expression "street value." Whether the term "value" is sufficiently definite to withstand a vagueness challenge is a question we do not address.

offence as to constitute a cruel and unusual punishment."
*McDonald* v. *Commonwealth*, 173 Mass. 322, 328 (1899),
aff'd, 180 U.S. 311 (1900). Underlying this principle is "a
precept of justice that punishment for crime should be
graduated and proportioned to offense." *Weems* v. *United
States*, 217 U.S. 349, 367 (1910). But in judging legislative
determinations of crimes and punishments, we exercise
our powers of review with great caution. *Commonwealth*
v. *Jackson*, 369 Mass. 904, 909 (1976). As we have earlier
observed, the Legislature's power to proscribe conduct
and to prescribe penalties is necessarily broad and its
judgment is to be accorded due respect.[7] *Commonwealth*
v. *Jackson, supra. Commonwealth* v. *Morrow*, 363 Mass.
601, 610-611 (1973). Only where the punishment is so
disproportionate to the crime that it shocks the con-
science and offends fundamental notions of human digni-
ty may we declare a criminal sanction to be in violation
of the Eighth Amendment or art. 26. *Commonwealth* v.
*Jackson, supra* at 910, citing *In re Lynch*, 8 Cal. 3d 410,
424 (1972).

In order to mitigate the inherent subjectivity in the
"shocks the conscience" standard, a growing number of
courts, this one among them, have attempted to develop
a more objective framework for the evaluation of the
constitutionality of criminal sentences. See, e.g., *Com-
monwealth* v. *Jackson, supra; Carmona* v. *Ward*, 576 F.2d
405 (2d Cir. 1978), cert. denied, 439 U.S. 1091 (1979); *Hart*
v. *Coiner*, 483 F.2d 136 (4th Cir. 1973); *People* v. *Broadie*,
37 N.Y. 2d 100, cert. denied, 423 U.S. 950 (1975); Mulli-
gan, Cruel and Unusual Punishments: The Proportional-
ity Rule, 47 Fordham L. Rev. 639, 645 (1979); Note, 1976
Wis. L. Rev. 655. Three factors compose the gist of the

---

[7] "[T]he power of punishment is vested in the legislative, not in the
judicial department. It is the legislature, not the Court, which is to
define a crime and ordain its punishment." *United States* v. *Wiltberg-
er*, 18 U.S. (5 Wheat.) 76, 95 (1820) (Marshall, C.J.). See *Rummel* v.
*Estelle*, 568 F.2d 1193, 1202 n.3 (5th Cir. 1978) (Thornberry, J., dissent-
ing), cert. granted, 441 U.S. 960 (1979).

analysis: (1) the nature of the offense and of the offender, (2) a comparison with penalties of other jurisdictions for the same offense, and (3) a comparison with penalties for more serious crimes within the jurisdiction. Viewed according to this test, the proposed sentencing provisions questioned here, we conclude, are not in violation of the constitutional proscription against "cruel and unusual" punishment.

We begin by examining the nature of the crime of drug distribution and what we may assume to be the rationale for mandatory sentencing. There can be little doubt that the problems connected with traffic in narcotics are serious social concerns. Indeed, criminal narcotics sales are not simply isolated economic transactions. They may be said to form the root of a pervasive cycle of destructive drug abuse, a phenomenon which accounts for untold numbers of crimes of violence and crimes against property. President's Commission on Law Enforcement and the Administration of Justice, Task Force Report: Narcotics and Drug Abuse, 7, 10-11 (1967).

In addition to sparking the fires of collateral crime, drug addiction, of course, poses a social evil in and of itself. It "degrades and impoverishes those whom it enslaves," and is a significant cause of family disruption.[8] *People* v. *Broadie, supra* at 113. Thus, we do not think it unreasonable for the Legislature to treat narcotics offenses with special severity. "Society has a right to prohibit and punish not only overtly criminal conduct but other conduct which creates danger, or a sufficient probability of danger, to the community at large." *Carmona* v. *Ward, supra* at 412. *McQuoid* v. *Smith,* 556 F.2d 595, 599 (1st Cir. 1977). See Wheeler, Toward a Theory of Limited Punishment: An Examination of the Eighth Amendment, 24 Stan. L. Rev. 838, 851 (1972).

---

[8] By emphasizing the significance of narcotics abuse, we by no means minimize other, less tangible but perhaps more basic, causes of crime. Likewise, we do not suggest that the existence of drug traffickers is the single cause of narcotics addiction.

Likewise, we find it reasonable for the Legislature to have selected mandatory sentencing in this area as part of its crime control policy. While the wisdom of this approach is, of course, fairly debatable, there is substantial support for the theory that certainty of punishment has a significant effect on the incidence of crime. See, e.g., J. Q. Wilson, Thinking About Crime 174–175 (1975); Becker, Crime and Punishment: An Economic Approach, 76 J. Pol. Econ. 169 (1969). See also *Commonwealth* v. *Jackson, supra* at 912-913.

It is significant to note, moreover, that courts in other jurisdictions have consistently upheld long periods of imprisonment for serious narcotics offenses. See, e.g., *Gregory* v. *United States*, 585 F.2d 548 (1st Cir. 1978); *Salazar* v. *Estelle*, 547 F.2d 1226 (5th Cir. 1977); *United States* v. *Fiore*, 467 F.2d 86 (2d Cir. 1972); *McWilliams* v. *United States*, 394 F.2d 41 (8th Cir. 1968); *Smith* v. *United States*, 273 F.2d 462 (10th Cir. 1959) (en banc), cert. denied, 363 U.S. 846 (1960); *Black* v. *United States*, 269 F.2d 38 (9th Cir. 1959); *People* v. *Broadie*, 37 N.Y. 2d 100 (1975); *State* v. *Stetson*, 317 So. 2d 172 (La. 1975). To be observed also is the fact that the United States Supreme Court has never found a sentence imposed in a criminal case violative of the Eighth Amendment simply on account of its length.[9] Given the serious nature of the offenses at which the proposed enactments are aimed, we thus think it constitutionally acceptable for the Legislature's response to include potentially long mandatory sentences.[10] Were

---

[9] Apart from cases involving capital punishment, the Supreme Court has on only three occasions voided punishments under the Eighth Amendment. In *Weems* v. *United States*, 217 U.S. 349 (1910), the Court struck down a punishment involving fifteen years of "painful labor." In *Robinson* v. *California*, 370 U.S. 660 (1962), the Court held that imprisonment for the status of being a drug addict was a cruel and unusual punishment. A plurality of the Court in *Trop* v. *Dulles*, 356 U.S. 86 (1958), found that, after a deserter from the armed forces was court-martialed and given a dishonorable discharge, to punish him further by depriving him of his citizenship contravened the Eighth Amendment.

[10] Neither do we find the provisions barring parole or early release to be constitutionally objectionable. "There is no constitutional or

such harsh terms ordered for offenders whose only crime was the possession of a small quantity of narcotics, we would be more hesitant in certifying these penalties under the Eighth Amendment or art. 26. See *Downey* v. *Perini*, 518 F. 2d 1288 (6th Cir.), vacated and remanded on other grounds, 423 U.S. 993 (1975); *Davis* v. *Zahradnick*, 432 F. Supp. 444 (W.D. Va. 1977); *People* v. *Lorentzen*, 387 Mich. 167 (1972).

Turning to the other two prongs of the trilateral "disproportionality" test, we correspondingly find no constitutional barrier to enactment of the proposed legislation. The instant drug bills are not unlike severe penalty provisions for narcotic offenses that can be found in other States. See, e.g., N.Y. Penal Law § 220.21 (McKinney Supp. 1979); N.J. Stat. Ann. § 24 : 21-19 (West Supp. 1979). Similarly, when viewed in comparison to the prescribed penalties for the commission of more serious crimes in the Commonwealth, the suggested mandatory sentences for those found trafficking in sizeable amounts of narcotics do not appear to be excessive. Cf. *Carmona* v. *Ward*, 439 U.S. 1091, 1098-1102 (1979) (Marshall, J., dissenting from denial of certiorari).

Accordingly, we answer

Question one: "No."

Question two: "No."

The foregoing answers and opinions are submitted by the Chief Justice and the Associate Justices subscribing hereto on the sixth day of July, 1979.

> EDWARD F. HENNESSEY
> FRANCIS J. QUIRICO
> ROBERT BRAUCHER
> BENJAMIN KAPLAN
> HERBERT P. WILKINS

---

inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz* v. *Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979).

LIACOS, J. (dissenting, with whom Abrams, J., joins). I dissent. I am of opinion that each of the four bills submitted, if enacted, would violate art. 26 of the Declaration of Rights of the Constitution of Massachusetts. Because I am informed that the General Court may prorogue in the near future, time does not permit that I set forth the reasons for my view.

The reservations expressed by the majority as to other possible constitutional infirmities these bills may suffer in areas not raised by the questions posed to the court provide additional reasons, on alternative grounds, to doubt the constitutionality of these bills.