Cosgrove, Robert C., J.
In February 2013, a Norfolk County Grand Jury returned a number of indictments against the defendant Stephan Larkin, charging him with various drug-related offenses.[1] Currently before this court is Larkin’s motion to dismiss indictment No. NOCR13-0177-001, charging him with trafficking in Oxycodone in violation of G.L.c. 94C, §32E(c)(2). Larkin argues that Section 32E(c)(2) is unconstitutional as applied to pills containing Oxy-codone, violating his right to due process of law, and his right to be free from cruel and unusual punishment. Specifically, Larkin contends that, for sentencing purposes, calculating the entire weight of a pill as opposed to the amount of Oxycodone contained in the pill is not rationally related to the goals of the statute, and is inconsistent with the Federal Sentencing Guidelines. After hearing, and for the reasons stated below, Larkin’s motion to dismiss indictment NOCR13-0177-001 is denied.
Under the Fourteenth Amendment to the United States Constitution, a “statute will satisfy due process if it ‘bears a reasonable relation to a permissible legislative objective.’ ” Rushworthv. Registrar of Motor Vehicles, 413 Mass. 265, 268 (1992), quoting Pinnick v. Cleary, 360 Mass. 1, 14 (1971). Similarly, “(u)nder Part II, c. 1, §1, art. 4, of the Massachusetts Constitution and arts. 1, 10, and 12 of the Declaration of Rights, a statute will satisfy due process if it ‘bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare.’ ” Id. at 268-69, quoting Sperry & Hutchinson Co. v. Director of the Div. on the Necessaries of Life, 307 Mass. 408, 418 (1940).
General Laws c. 94C, §32E(c)(2), states, in relevant part:
Any person who trafficks in . . . opium or any derivative thereof by knowingly or intentionally manufacturing, distributing or dispensing... a net weight of 18 grams or more of any mixture containing . . . opium or any derivative thereof shall, if the net weight of. . . opium or any derivative thereof or any mixture thereof is . . . (t)hirty-six grams or more but less than 100 grams, be punished by a term of imprisonment in the state prison for not less than 5 nor more than 20 years.
(Emphasis added.) In reviewing Section 32E, the Supreme Judicial Court has repeatedly found that considering the total weight of the mixture as opposed to the weight of the pure drug does not offend constitutional considerations, and is rationally related to the purpose of the statute. See Commonwealth v. Montoya, 464 Mass. 566, 570 n.2 (2013) (‘The relative purity of a mixture is not material to the determination of the over-all weight of the drugs. The total weight of the mixture determines the offense for which the defendant may be convicted”); Commonwealth v. Beverly, 389 Mass. 866, 868-69 (1983) (“[t]he volume of the material being sold provides a rational basis for dealing with trafficking in drugs”). Indeed, as Oxycodone is sold in pill form, considering the volume of pills sold instead of the amount of the opium derivative contained in the pills “provides a rational basis for dealing with” those who traffick in Oxycodone. See Beverly, 389 Mass, at 868-69. Cf. United States v. Bayerle, 898 F.2d 28, 31-32 (4th Cir. 1990) (rejecting due process challenge to sentencing scheme based upon aggregate weight of Dilaudid); Commonwealth v. Thomas, 2012 PA Super 169 at *10~*11 (Pa.Super.Ct. Aug. 17, 2012) (“while this Court has not addressed the issue of the constitutionality of aggregate weight sentencing schemes as applied to narcotic pills, other state and federal courts have, and all have upheld the constitutionality of similar sentencing schemes”).
The United States Supreme Court upheld a similar sentencing scheme for LSD, and found that consider- *499 mg the weight of the blotter paper containing LSD and not just the weight of the pure drug did not violate due process. Chapman v. United States, 500 U.S. 453, 465-67 (1991). Similar to the opium derivatives in Oxycodone, LSD is sold to retail customers in a “carrier” medium.[2] See id. at 457. While the carrier mediums for LSD and the opium derivative at issue here do not “dilute” the drugs, as is often the case with drugs like heroin or cocaine, they are used to facilitate the distribution of the drugs. See id. at 466. Thus, the Court reasoned that Congress had a rational basis for its choice of including the weight of the carrier medium in the sentencing scheme, noting that “(b]y measuring the quantity of the drugs according to the ‘street weight’ of the drugs . . . rather than according to the net weight of the active component, the statute . . . increased] the penalty for persons who possess large quantities of the drug, regardless of their purity.” Id. at 465.
Further, the penalty provided by G.L.c. 94C, §32E(c)(2) is not grossly disproportionate to the crime and does not “shock[ ] the conscience,” and therefore, does not constitute cruel or unusual punishment. See Commonwealth v. Jackson, 369 Mass. 904, 910 (1976). The Supreme Judicial Court has upheld mandatory minimum sentences for drug trafficking offenses, and the five-year mandatory minimum at issue here is not unreasonably severe. Opinion of the Justices, 378 Mass. 822, 829-33 (1979) (finding twenty-five-year mandatory minimum sentence for drug offense to be constitutional). Importantly, Larkin misstates the purpose and effect of the Federal Sentencing Guidelines, which were recently amended to calculate sentences for trafficking in opium derivatives based on the weight of the drug as opposed to the weight of the pill. In amending the Federal Guidelines, Congress intended to “keep penalties for offenses involving 10 mg Oxycontin identical to the current levels but would increase penalties for all other doses of Oxycontin.” Statement of General Counsel Tetzlaff, U.S. Sentencing Commission, Minutes of March 16, 2003 Public Meeting (emphasis added). Thus, Congress was concerned with proportionality issues with respect to pills containing difference doses of the active drug, and wanted to punish those who trafficked in more potent pills more severely than those who trafficked in less potent pills. See id. Congress was not concerned that sentences for Oxycontin or Oxycodone trafficking were disproportionately high when compared with other drugs. See id. Therefore, the Federal Guidelines do not provide support for the argument that the mandatory minimum outlined in G.L.c. 94C, §32E(c)(2) is grossly disproportionate to the offense of trafficking in Oxy-codone.
Order
The defendant’s motion to dismiss count one is denied.

Specifically, Larkin was charged with trafficking in Oxy-codone in violation of G.L.c. 94C, §32E(c)(2), possession with intent to distribute a class B substance in violation of G.L.c. 94C, §32A(a), and possession with intent to distribute a class B substance, subsequent offense, in violation of G.L.c. 94C, §32A(b).

Nhe carrier medium for LSD is blotter paper. Chapman, 500 U.S. at 457. Here, the carrier medium of the opium dervivative is the Oxycodone pill.