COMMONWEALTH *vs.* JAMES M. GERALD.

Suffolk.    October 9, 1969. — November 4, 1969.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Evidence,* Photograph, On cross-examination, Presumptions and burden of proof.   *Practice, Criminal,* Argument by prosecutor, Charge to jury. *Words,* "Reasonable doubt."

The form of a certain photograph of the defendant in a criminal case and testimony concerning it did not render it inadmissible on the ground that it was shown to have come from police files and so suggested prior criminal activity of the defendant.  [388]

It was within the discretion of the judge at a criminal trial to exclude a question in cross-examination of a witness for the Commonwealth unless there ". . . [would] be evidence" of the subject matter of the question.  [388–389]

Certain remarks by the prosecutor in his argument at a criminal trial did not disparage the defendant's constitutional right of confrontation or constitute comment on his failure to testify.  [389]

A summary of certain evidence by the judge in his charge at a criminal trial did not constitute an invasion of the province of the jury in view of his instructions to them to "take . . . [their] memory" of such evidence, not his, and to determine whether it was credible and persuasive.  [389]

The language of a charge to the jury on the subject of reasonable doubt at a criminal trial did not require a probability of innocence to constitute reasonable doubt, nor change the Commonwealth's burden of proof to a mere preponderance of the evidence, nor tend to mislead or confuse the jury, nor show reversible error.  [390]

No error appeared in portions of the charge to the jury at a criminal trial relating to the cross-examination of the complainant.  [390–391]

A certain charge to the jury at a criminal trial did not constitute an indirect comment on the failure of the defendant to testify but, on the contrary, adequately directed the jury not to give any weight to such failure.  [391–392]

THREE INDICTMENTS found and returned on December 5, 1968.

The cases were tried in the Superior Court before *Lurie,* J.

The cases were submitted on briefs.

*Robert A. Stanziani & Joseph F. Annunziata, Jr.,* for the defendant.

*James M. Kickham,* Assistant District Attorney, for the Commonwealth.

CUTTER, J. Gerald, charged with kidnapping, rape, and assault with a dangerous weapon, was found guilty on all three indictments in a trial conducted under G. L. c. 278, §§ 33A–33G. We have before us the assignments of error discussed below.

There was evidence upon which the following facts could be found. A young woman (the complainant) was employed as a reservation clerk by an airline. She planned to work a shift from 6 A.M. to 2:30 P.M. on November 2, 1968. While getting out of her automobile in a parking lot near High Street, Boston, about 5:50 A.M. she was accosted by Gerald, then a stranger to her. He forced her, after a struggle and by use of a knife, to drive him to a vacant lot in Dorchester, and there compelled her to disrobe. He then had sexual relations with her. She dressed herself and then drove back to Boston under his direction. There was ample evidence to permit finding that Gerald was the assailant, that the complainant acted wholly under compulsion, and that thereafter she made fresh complaint of the attack upon her. This evidence could be believed despite medical testimony that there were only slight, if any, physical indications of an attack when she was examined within about three to four hours of the episode. Other evidence bearing upon the assignments of error is stated in connection with the discussion of the assignment to which it is pertinent.

1. The first assignment of error is based upon the complainant's testimony concerning a photograph of Gerald containing on the same sheet at the left a profile view and at the right a front view. The lower part of the front view is cut off with the consequence that the profile view is longer than the front view. The complainant testified that at some time after her initial discussion with the police, she went "somewhere . . . [to] look at a photo-

graph." The defendant's counsel objected when she was asked if she knew "where . . . [she] went." Disregarding the objection, the complainant answered, "I don't know the – – it was somewhere on Commonwealth Avenue, and I don't know whether it was the FBI or State Police where they keep on file – –." The judge admitted this answer.

There is risk that any use in evidence of photographs of the double type ordinarily used in police identification files will suggest to the jury that the defendant may have a prior criminal record. See *Commonwealth* v. *Nassar*, 351 Mass. 37, 42–43; see also pp. 45–46; S. C. 354 Mass. 249, 258–259, 261–262. Accordingly, prosecuting counsel usually should avoid (a) use of such pictures in a form in which they may be identified as police pictures and (b) references in testimony to the files from which they were obtained. In the present cases, the reference to the place where the complainant saw the picture did not quite go to the extent of stating that the picture came from police files. In introducing the picture in evidence over the defendant's objection, it was merely stated that it was one the complainant was "shown at the building on Commonwealth Avenue." The picture contained no damaging notations and, although its use in evidence was undesirable, it was not prejudicial in the circumstances.[1]

2. In the course of cross-examination, the complainant was asked by the defendant's counsel if, while with the defendant on her way back to Boston in her automobile, she had met "some girl friends who had seen you with this man, a colored man" and "who tooted their horn and waved." The judge excluded the question unless there "will be evidence that will bear out what's implicit in this question," but gave the defence permission to recall the complainant if later there was evidence of the incident. This action was

---

[1] There was very clear identification of the defendant by the complainant in court. The defendant, when arrested on the afternoon of the episode, was in possession of a book of matches which had been handed to him by the complainant, and of a knife similar to one he had left in her automobile. While he was restraining the complainant, the defendant had shown her a pay check with his name on it which she had memorized.

within the discretion of the trial judge to control the scope of cross-examination. *Commonwealth* v. *Granito,* 326 Mass. 494, 496. See *Commonwealth* v. *Geagan,* 339 Mass. 487, 509–510.

3. During argument the assistant district attorney expressed regret that the complainant had been "subjected to . . . degradation and . . . humiliation" because it was necessary that the case be tried in public. The prosecutor also told the jury "that there wasn't one bit of conduct on the part of that girl that rang with anything but truth." There is no merit to the defendant's contentions that the remarks involved (a) improper disparagement of the constitutional right of confrontation (see *Commonwealth* v. *Kerrigan,* 349 Mass. 295, 300, and authorities cited), or (b) comment upon the defendant's failure himself to take the stand. Cf. *Commonwealth* v. *Domanski,* 332 Mass. 66, 69; *Griffin* v. *California,* 380 U. S. 609, 610–611, 613–615.

4. The trial judge in his charge summarized various parts of the evidence in about eleven pages of the transcript of the trial, in part in connection with discussion of issues of law. He emphasized that if his summary "does not coincide with your memory, you take your memory and pay no attention to the fact that a judge remembered it differently." There was no improper invasion of the province of the jury. The judge adequately stated that it was for the jury to determine whether the evidence was credible and persuasive.

5. In a manner consistent with the charge in *Commonwealth* v. *Webster,* 5 Cush. 295, 320, the trial judge instructed, "Now, by reasonable doubt is meant a doubt that appeals to your common sense. It is not required that a jury should be convinced to a mathematical certainty or to absolute certainty. It is required that the jury should be convinced to a degree of moral certainty so that as human beings you can say, 'I have no doubt that appeals to my reason, to my common sense,' and predicated upon the evidence that you have heard, if you attain to that position, to that feeling

unanimously, then the case has been proved beyond a reasonable doubt."

The judge then went on to say, "A very distinguished [British] judge . . . once put it this way . . . 'In a criminal case before a defendant is found guilty the evidence need not reach certainty, but it must carry a high degree of probability. If the evidence against a man is so strong as to leave only a remote possibility in his favor which can be dismissed with the sentence . . . *[O]f course it is possible but not in the least probable* . . . the case is proved beyond a reasonable doubt, but nothing short of that will suffice' "[2] (emphasis supplied). The defendant contends that this portion of the charge was erroneous. The substance of this language was repeated later in the charge. The judge then added, "And if, therefore, during your deliberations you find a doubt that appeals to your common sense, this defendant gets the benefit of that doubt."

Explanation of "reasonable doubt," we think, is usually best made in close reliance on the time-tested language of *Commonwealth* v. *Webster,* 5 Cush. 295, 320. The further explanation given by the trial judge seems to us wholly consistent with this language and not in any sense prejudicial. The language does not go so far as to require a probability of innocence to constitute a reasonable doubt nor does it "reduce the prosecution's burden from 'beyond a reasonable doubt' to merely a preponderance of the evidence." Cf. *United States* v. *Guglielmini,* 384 F. 2d 602, 606–607 (2d Cir.). The judge made it clear that any doubt which appeals to the juror's common sense is sufficient. We perceive no danger that the jury were misled by the language used or that they were confused about the standard of proof to be applied.

6. The judge suggested in his charge that the jury, in testing the complainant's testimony, ask themselves whether,

---

[2] The quotation is closely like that mentioned in Williams, Criminal Law, The General Part (2d ed.) § 286, as "the best effort at explanation" of the term "reasonable doubt." See *Miller* v. *Minister of Pensions,* 63 T. L. R. 474 (K.B. Div. per Denning, J.).

in the circumstances, she could reasonably be expected to remember details of events about which inquiry was made. He also told the jury that they "heard the type of cross-examination, the questions that were put" and that it was for them to "decide what effect, if any, such cross-examination has upon you." This instruction properly brought to the attention of the jury issues which they reasonably could consider.

7. The judge charged, "In this case the defendant elected not to take the stand. As a matter of fact, the defendant introduced no evidence whatsoever by way of any witnesses on his behalf. Now, the fact that he elected not to take the witness stand is in no way to be regarded by you as involving the question of his innocence or his guilt. He has a right under our jurisprudence to say to the Commonwealth, as indeed he is saying, 'You must prove your case against me beyond a reasonable doubt. I do not have to say a word.' So in this case there has been presented no evidence from any witness appearing on behalf of the defendant, and I will ask in the jury room that you not ask the question, 'Why didn't he take the stand?' You will concern yourselves solely with the evidence you heard, and this evidence that you heard came from the lips of the complainant, who has said that she was the victim involved in these three crimes of which the defendant stands accused . . . ." This adequately directed the jury not to give any weight to the defendant's failure to testify.

The judge referred in two places to "uncontradicted" testimony, which, if false, could have been contradicted by persons other than the defendant. In one instance, the reference was to testimony about what went on after the complainant consulted the police. In the other instance, it was to testimony that, after the assault episode, the complainant had a swollen lip. The former of these instances was a matter about which the defendant could not have testified, for he had no direct knowledge of most, if not all, of what the complainant and the police did. Any person who observed the complainant directly after the episode could

have testified about whether she then had a swollen lip. Thus, reference to these pieces of testimony as uncontradicted was in no sense an indirect comment on the defendant's failure to testify. The case is distinguishable from *Desmond* v. *United States*, 345 F. 2d 225, 226–227 (1st Cir.), relied on by the defendant.

8. Other contentions by the defendant have been discussed adequately above or require no comment. In reaching the conclusion that the charge was proper, the charge has been considered as an entirety and not merely by examination of the separate parts brought to our attention by the defendant's brief.

*Judgments affirmed.*