COMMONWEALTH *vs.* ROBERT L. SCOTT.

Hampden.    December 7, 1971. — December 31, 1971.

Present: TAURO, C.J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Practice, Criminal,* Venue, Withdrawal of counsel.

A defendant convicted of kidnapping, assault and battery, rape and sodomy was not entitled to a change of venue based on pretrial publicity where trial of the indictments did not start until almost ten months after the crimes were committed and almost five months after the publicity had apparently ceased and the hearing on the motion for a change of venue had been heard. |696–697|

No abuse of discretion by the judge in a criminal case in not permitting the defendant's counsel to withdraw appeared where the judge was warranted in concluding from statements he heard from the defendant and his counsel that an attempt by the defendant to discharge his counsel on the day the trial was scheduled to open, after earlier postponement, was part of a plan to delay trial. |698–701|

INDICTMENTS found and returned in the Superior Court on December 19, 1969.

A motion for change of venue for trial was heard and denied by *Good*, J., and the cases were tried before *De-Saulnier*, J.

The cases were submitted on briefs.

*Reuben Goodman & Robert V. Greco* for the defendant.

*Matthew J. Ryan, Jr.*, District Attorney, *& Leonard E. Gibbons*, Assistant District Attorney, for the Commonwealth.

QUIRICO, J.   The defendant was tried, convicted and sentenced on four indictments charging the crimes of kidnapping (No. 24055), assault and battery (No. 24056), rape

(No. 24057), and sodomy (No. 24058). His appeals under G. L. c. 278, §§ 33A–33G, present two assigned errors for review by this court. One relates to the denial of his motion for a change of venue, and the other relates to the denial of a request made by the defendant and by his counsel that counsel be permitted to withdraw his appearance. With the issues thus limited it is not necessary for us to recite the sordid details of the crimes as described in the evidence.

1. *Motion for Change of Venue.* The crimes charged by the indictments were all allegedly committed at Springfield on December 19, 1969. The victim of the crimes was related to persons involved in the publication of daily newspapers in Springfield, and the incident was the subject of considerable coverage by those newspapers. The newspapers also carried notices of a reward for information concerning the persons who committed the crimes. No news item contained the name of the defendant or otherwise identified him until February 8, 1970, when he and two other persons were arrested for an alleged burglary.

The indictments were returned by the grand jury in April, 1970. On May 11, 1970, the defendant filed a motion for change of venue to another county, alleging that "because of extensive publicity in local and regional newspapers, radio and television concerning the circumstances and details of the alleged offenses" he could not obtain a fair and impartial trial in Hampden County. At the hearing on the motion on May 21, 1970, approximately seventy articles which had appeared in the Springfield newspapers from December 20, 1969, through April, 1970, concerning the alleged crimes were placed in evidence. The motion was denied on June 16, 1970. On the record before us, it was not error to deny the motion.

"[W]hile under G. L. (Ter. Ed.) c. 277, § 51, there may be a change in the place of trial it should be ordered with 'great caution and only after a solid foundation of fact has been first established.' *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 180. The newspaper accounts and

comments submitted to the judge did not require a finding that the guilt of the defendant had been so generally and substantially prejudged by the residents of the county that an unbiased tribunal for the trial could not be obtained." *Commonwealth* v. *Bonomi*, 335 Mass. 327, 333. *Commonwealth* v. *Millen*, 289 Mass. 441, 463–464. *Commonwealth* v. *Sheppard*, 313 Mass. 590, 594–595, cert. den. sub nom. *Sheppard* v. *Massachusetts*, 320 U. S. 213. *Commonwealth* v. *Blackburn*, 354 Mass. 200, 203–204. *Commonwealth* v. *Wilson*, 355 Mass. 441, 445. *Commonwealth* v. *Smith*, 357 Mass. 168, 171–173.

The trial of the indictments did not start until October 5, 1970, almost ten months after the crimes were alleged to have been committed, and almost five months after the hearing on the motion for a change of venue. The motion was not renewed before trial. There is nothing in the record to indicate whether the case was the subject of publicity after May 11, 1970, or that the publicity before that date had any effect on the defendant's ability to receive a trial before an unbiased jury. The jurors were instructed and interrogated in substantially the language of G. L. c. 234, § 28, to make known whether they were related to the defendant, the victim, or the attorneys in the case, whether they had any interest in the case or had expressed or formed any opinion in the case and whether they were sensible of any bias or prejudice for or against the parties. No juror reported any disqualification under that instruction. The defendant made no request that the jurors be given any additional instruction or that any questions be put to them in relation to the alleged publicity. The jurors were kept in custody from the time they were empanelled until they returned their verdicts. The judge informed the jurors that the purpose for this was to prevent their exposure to trial publicity. On this record, the newspaper stories published from December 20, 1969, through April, 1970, did not entitle the defendant to a change of venue either when his motion therefor was heard on May 21, 1970, or on October 5, 1970, when the trial began.

2. *Denial of Withdrawal of Counsel.* On the return of the indictments in April, 1970, the defendant was arraigned and he pleaded not guilty. At that time he was represented by a lawyer from the Massachusetts Defenders Committee (MDC). On April 30, 1970, the MDC lawyer withdrew his appearance with approval of the court. See Rule 101C of the Superior Court adopted April 28, 1967, effective June 1, 1967. On the same date Mr. J. Arthur Hickerson, a lawyer selected and retained by the defendant, filed his appearance for him.

On May 11, 1970, Mr. Hickerson filed the following motions for the defendant on each of the four indictments: motion to dismiss, motion for speedy trial, motion for change of venue, motion for a bill of particulars, motion for trial separate from other indictments, motion for copy of a certain written statement, motion for names of grand jury witnesses, motion for exculpatory evidence, and motion to inspect vehicle. The motion for copy of a written statement was later waived. All the others were heard and argued by Mr. Hickerson. As a result of Mr. Hickerson's appearance for the defendant, the case was continued until May 20, 1970, and then continued again until June 23, 1970. On the latter date Mr. Hickerson moved for a further continuance which was allowed, and a new trial date was set for September, 1970. Thereafter counsel agreed to have the case assigned for trial on October 5, 1970, to permit them to arrange for the attendance of necessary witnesses including the victim of the crimes who was attending school.

When the indictments against the defendant were called for trial on October 5, 1970, his counsel, Mr. Hickerson, informed the court that on that morning the defendant had informed him he no longer wanted him to act as his counsel. Mr. Hickerson asked to be permitted to withdraw from the case. He said that (a) there was no animosity between him and the defendant, (b) he had not been paid a fee which had been promised him, and (c) he has received a request from the defendant "to come to Walpole with certain materials and other things, and it amounted to my getting

advice from other sources than my choice in this case."
The defendant told the court that he did not want Mr.
Hickerson to represent him. He was allowed to read a
statement in which he claimed the right "to be granted
counsel of . . . [his] own choice . . . without paying any
attorney," and in which he cited the case of *Lamoureux* v.
*Commonwealth,* 353 Mass. 556. He did not ask to have a
lawyer from the MDC, or any other particular lawyer, as-
signed to represent him. He gave no reason for not want-
ing Mr. Hickerson to represent him. The denial of the
request of counsel for leave to withdraw was not error.

No question has been raised about the experience, skill
or competence of Mr. Hickerson, or about the manner in
which he represented the defendant throughout the prepara-
tions for trial and in the trial of the indictments. After re-
viewing the prior proceedings in the case the judge con-
cluded that the defendant's attempt to discharge his counsel
on the day the trial was scheduled to open was part of a
plan to delay trial. The conclusion was warranted on the
statements he had heard from the defendant and his coun-
sel. The defendant did not ask to be allowed to proceed
pro se, and he was therefore never denied that right.
"[T]he criminal defendant must make an unequivocal re-
quest to act as his own lawyer in order to invoke the right."
*United States ex rel. Maldonado, petitioner* v. *Denno,*
348 F. 2d 12, 15 (2d Cir.). *United States* v. *Plattner,*
330 F. 2d 271, 276 (2d Cir.). *United States* v. *White,* 429 F. 2d
711, 712 (D. C. Cir.). The defendant was asking for a
change in counsel without stating any reasons therefor
apart from claiming the right to counsel of his choice. The
only thing certain about his request was that if it were
granted, still further delay in trial would have resulted.

A similar situation was faced by the trial judge in *United
States ex rel. DiBlasi, petitioner* v. *McMann,* 236 F. Supp.
592 (N. D. N. Y.), in which the defendant, before his trial
began in a State court, informed the trial judge that he no
longer wished his assigned counsel to represent him and
asked that he be discharged. His request was denied and

he sought a writ of habeas corpus in the Federal District Court. In upholding the action of the trial judge, the latter court said (236 F. Supp. at 593–594): "The only thing I find is expressed dissatisfaction by DiBlasi, the petitioner, with his lawyer, but this, in my view, was done in an atmosphere that the trial judge interpreted as jockeying and evasion by two defendants to delay trial and disrupt the administration of justice. It is no new stance by defendants and is always a perplexing problem for the Judge. . . . Decision[s] of the kind made here by the trial judge cannot be made with the cool detachment of ivory tower appraisal, and . . . should not be interfered with unless apparent unfairness or prejudice is clear." This decision was affirmed on appeal, *United States ex rel. Maldonado, petitioner* v. *Denno,* 348 F. 2d 12, 16 (2d Cir.), cert. den. sub nom. *DiBlasi, petitioner* v. *McMann,* 384 U. S. 1007. In a more recent case, *United States* v. *White,* 429 F. 2d 711, 712 (D. C. Cir.), the court, in rejecting a claim similar to that made by the defendant in this case, said: "[A]ppellant's expressed dissatisfaction with his trial counsel did not obligate the court either to substitute new counsel or advise him sua sponte of his right to proceed pro se. The discretion available to the trial court not to substitute counsel, which appellant concedes is considerable, was not abused. . . . Appellant gave no indication of a desire to proceed without counsel. He made no request to be permitted to do so. In expressing dissatisfaction with appointed counsel he was appealing rather to the discretion of the court to substitute another." (Citing *United States ex rel. Maldonado, petitioner* v. *Denno, supra.*)

The defendant's reliance upon *Lamoureux* v. *Commonwealth,* 353 Mass. 556, is misplaced. In that case, a single justice of this court upheld the trial judge's denial of the petitioner's request to discharge counsel during trial. We affirmed the decision of the single justice, citing (at p. 560) the broad discretion of the trial judge when placed in such a difficult position and his "function to preserve decorum in his court room and so indirectly to contribute to the maintenance of respect for the courts."

The defendant had the right to be represented by counsel of his own choice if he had the means to engage one, and otherwise to be represented by counsel from the MDC. Counsel retained by him, having filed his appearance, was not free to withdraw without leave of the court. Rule 101C of the Superior Court. The defendant was not free at his sole option to insist on a change of counsel regardless of the consequences. The general public, too, has rights. One of them is that criminal complaints or indictments be tried and disposed of with reasonable dispatch. The right to a reasonably speedy trial is not exclusively the defendant's. In balancing these private and public rights and interests, the trial judge did not abuse his discretion in ordering the trial to proceed on October 5, 1970, with Mr. Hickerson acting as counsel for the defendant.

*Judgments affirmed.*