COMMONWEALTH *vs.* ANTHONY ZACCAGNINI.

Suffolk. June 9, 1980. — August 20, 1980.

Present: HALE, C.J., GRANT, & DREBEN, JJ.

*Evidence,* Photograph, Cross-examination. *Error,* Harmless. *Witness,* Impeachment.

At the trial of a defendant charged with armed assault with intent to murder and assault and battery by means of a dangerous weapon, the judge's failure to instruct the jury as to accident, an issue raised by the evidence, did not create a risk of a miscarriage of justice where the judge properly charged the jury with respect to burden of proof and reasonable doubt. [426]

There was no support in the record of a criminal trial for the defendant's contentqon that he was denied the effective assistance of counsel. [426-427]

At a criminal trial the admission in evidence of an unsanitized mug shot of the defendant was not prejudicial where the jury were directly informed of the defendant's criminal record when he testified and was confronted with his record on cross-examination. [427]

The admission in evidence of a notebook taken from a defendant's automobile did not prejudice the defendant where there was nothing in the notebook which would give rise to an inference of criminal activity on the part of the owner in possession. [427]

A prosecutor's use of the term "Mr. Defendant" when addressing a defendant in a criminal case did not warrant reversal of his conviction. [427-428]

There was no merit to a defendant's contention that certain statements in a prosecutor's summation were inflammatory and prejudicial. [428]

INDICTMENTS found and returned in the Superior Court Department on October 26, 1978.

The cases were tried before *Alberti, J.*

*Barry P. Wilson* (*Irene Scharf* with him) for the defendant.

*Jan Roller,* Legal Assistant to the District Attorney (*Sharon D. Meyers,* Special Assistant District Attorney, with her) for the Commonwealth.

HALE, C.J.   The defendant has appealed from convictions of armed assault with intent to murder and assault and battery by means of a dangerous weapon.   No useful purpose would be served by a detailed recitation of the events leading up to the discharge of the gun which resulted in the wounding of the victim.   There is little resemblance between the victim's and the defendant's versions of the events that followed their meeting.   The victim testified that the defendant attempted to force him into the defendant's car at gun point, that he fled to the doorway of a nearby house, and that the defendant caught him there, shot him, and then took flight.   The defendant testified that it was the victim who pulled the gun, that the victim chased him to the doorway, that the gun fired in the ensuing struggle, and that the defendant fled unaware that the victim had been wounded.   We consider each of the claims of error briefed by the defendant.

1.   As no objection was made and no exception was taken to the judge's failure to charge the jury on self-defense or accident, those matters are not properly before us.   *Commonwealth* v. *Fluker*, 377 Mass. 123, 130-131 (1979).   Although on the evidence the defendant cannot fairly raise an issue of self-defense, he can raise an issue of accident.   Therefore, we have carefully scrutinized (*Commonwealth* v. *Stokes*, 374 Mass. 583, 590-591 [1978]) the judge's charge as a whole and are satisfied that there will be no substantial likelihood of a miscarriage of justice.   In his charge the judge carefully and repeatedly placed the burden of proof on the Commonwealth, telling the jury that it was the Commonwealth's burden to prove every element of the crimes charged beyond a reasonable doubt.

2.   We find no merit in the defendant's contention that he was denied the effective assistance of counsel by the errors that he alleges his attorney made.   The twelve pages in the defendant's brief in which that point is argued cover general principles of the law in this area but offer us little help. When the defendant's specific complaints against his trial counsel are examined in light of the trial record, they ap-

pear to us as cranky carping. It appears from the record that this case was competently tried and that the defendant has "made no convincing showing that better work could have accomplished something better for the defense." *Commonwealth* v. *Key*, 381 Mass. 19, 31-33 (1980).

3. We assume arguendo that it was error to admit in evidence an unsanitized mug shot of the defendant. The danger in a mug shot is that it suggests to the jury that a defendant has a criminal record. *Commonwealth* v. *Gerald*, 356 Mass. 386, 387-388 (1969). However, the admission of such a photograph in the present case was harmless, as the jury were directly informed of the defendant's criminal record when he testified and was confronted with his record upon cross-examination.

4. We need not decide the defendant's claim that it was error not to suppress an orange notebook taken from his automobile. We have examined the notebook and find nothing in it from which any criminal activity on the part of the owner or possessor could reasonably be inferred. The admission of the notebook was harmless beyond a reasonable doubt. See *Commonwealth* v. *LaBriola*, 370 Mass. 366, 368 (1976). On cross-examination the prosecuting attorney tried to use the notebook to show that the defendant was a pimp. During that examination she asked the defendant several questions based on some writing in the notebook, but elicited only a denial that the book was the defendant's (he said it belonged to his girlfriend) or that any material in it was written in his handwriting, as well as negative responses to every other question concerning the notebook. The questions were proper cross-examination, as affirmative answers would have tended to impeach the defendant's testimony on direct (*Commonwealth* v. *Underwood*, 358 Mass. 506, 513 [1970]), but the questions developed nothing. Even if the notebook had been suppressed, it still could have been used for purposes of impeachment. *United States* v. *Havens*, 446 U.S. 620, 627-628 (1980).

5. The defendant asserts that the prosecuting attorney's use of the term "Mr. Defendant" when addressing him dur-

ing cross-examination was "demeaning and belittling" and that it "in conjunction with the use of unsanitized mug shots so prejudiced this trial that these convictions must be set aside."

The defendant relies principally on *Pendergrast* v. *United States*, 416 F.2d 776, 785-786 (D.C. Cir. 1969). We agree with that court when it said (at 786), in referring to the use of the term "Mr. Defendant," "The episode thus gives us concern, but on the record the probability of prejudice is too remote to warrant reversal."

6. The defendant argues that certain statements, which he has taken out of context from the prosecuting attorney's summation, "were highly inflammatory and prejudicial." We do not agree. In arguing a case before a jury, an attorney's job is to persuade that body, using only the proof adduced at trial and the reasonable inferences that can be drawn therefrom. *United States* v. *Bess*, 593 F.2d 749, 753 (6th Cir. 1979). Our reading of the entire summation indicates that the prosecuting attorney did just that and that her argument was well within the limits of propriety. She made a strong argument to the jury that they accept the victim's version of the event rather than the defendant's after examining the weaknesses in the defendant's version and the strengths of the victim's. At no time did she state any personal belief in the testimony of any witness or in the guilt of the defendant.

*Judgments affirmed.*