COMMONWEALTH vs. MICHAEL C. TUITT.

Hampden. October 4, 1984. — January 31, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Constitutional Law,* Assistance of counsel, Waiver of constitutional rights, Sentence, Cruel and unusual punishment. *Practice, Criminal,* Assistance of counsel, Continuance, Mistrial, Statement by prosecutor. *Habitual Offender. Firearms. Waiver.*

The judge in a criminal case did not abuse his discretion in denying the defendant's last-minute motion to dismiss his court-appointed attorney and hire substitute counsel despite counsel's statement that communications between him and his client had broken down, where the judge had heard the defendant's arguments respecting the reasons for his dissatisfaction with counsel and had found them "unsubstantiated" and "unsupported," and where counsel had stated that, if required to try the case, he would perform to the best of his professional ability. [803-807]

The judge in a criminal case did not err in denying the defendant's motion to proceed pro se, made after the denial of his motion to dismiss his court-appointed attorney, where the defendant stated that he wanted to proceed pro se rather than have his appointed counsel try the case, but explicitly refused to waive his right to counsel. [807-808] O'CONNOR, J., dissenting.

At the trial of a criminal case, testimony by a police detective who had participated in a photographic identification of the defendant that, before showing photographs to an eyewitness, he had "picked them out of [his] desk" did not warrant a mistrial in view of the prompt limiting instruction given by the judge. [808-809]

At the trial of a criminal case, testimony by the victim of a robbery that a man, later identified as the defendant, had threatened him with a gun, saying, "Don't get killed over anybody else's money," and evidence that a gun later seized from the defendant was identified by both the victim and an eyewitness as the one used in the robbery warranted a finding that the gun used in the robbery was a "weapon . . . from which a shot or bullet [could] be discharged." [809-810]

At the trial of a robbery case, the prosecutor in his opening statement did not err in referring to a "manhunt," and did not create a miscarriage of justice in his closing argument in stating his personal belief in the strength of the Commonwealth's case. [810-812]

Under G. L. c. 279, § 25, the habitual offender statute, a judge was required
to impose a sentence of life imprisonment on a defendant convicted of
armed robbery who had been convicted of crime at least twice earlier
and had been sentenced each time to at least three years' imprisonment
and committed to prison. [812-814]

INDICTMENTS found and returned in the Superior Court Department on July 15 and 16, 1982.

The cases were tried before *Robert L. Steadman, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Wendy Sibbison & William C. Newman* for the defendant.

*William T. Walsh, Jr.,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant, Michael C. Tuitt, was convicted of armed robbery while masked, G. L. c. 265, § 17, and of carrying a firearm without a permit, G. L. c. 269, § 10 (*a*). On the basis of several prior offenses, he was punished as an habitual offender under G. L. c. 279, § 25, and sentenced to life imprisonment. The judge also imposed a concurrent sentence of one year on the firearm conviction. The defendant appeals from his convictions, primarily on the grounds that the Superior Court judge wrongly denied his motion to discharge appointed counsel, and that the judge deprived him of his right to try his case pro se. The defendant also challenges the judge's application of the habitual offender statute, arguing that the statute does not require the imposition of a life sentence, and that the statute is invalid under various provisions of both the Federal and State Constitutions. We affirm the convictions and see no reason to disturb the sentence imposed.

The facts are as follows. The victim, Sylvester Jackson, testified that on June 14, 1982, at approximately 11:30 A.M., he was driving to a bank in Springfield to deposit $4,000 in receipts from two local liquor stores. He stopped at the corner of Monroe and Hancock streets because a blue Chevrolet, later identified as an automobile registered to the defendant's mother, was parked in the middle of the street, blocking his

way. Two men suddenly opened the doors on each side of Jackson's automobile. The man on the driver's side of Jackson's vehicle, later identified by an eyewitness as the defendant, was wearing a ski mask over his head. He threatened Jackson with a pistol, similar to one seized from the defendant at the time of his arrest approximately three weeks later, and demanded: "Give me the money. Don't get killed over anybody else's money." The other assailant grabbed the bag of money from the front seat and passed it to the defendant. The defendant then ran to the blue Chevrolet stopped in front of Jackson's automobile and removed his ski mask. A second eyewitness saw the defendant driving away from the scene. The other assailant ran away on foot.

1. *Denial of the defendant's motion to discharge appointed counsel.* Trial was initially set for October 4, 1982, but the defendant was granted a two-week continuance for additional preparation. On October 20, 1982, the day on which trial was scheduled to begin, the defendant filed a motion to dismiss his court-appointed attorney and requested that he be allowed to hire substitute counsel. The judge heard the defendant's arguments relative to his appointed counsel's lack of preparation and failure to interview certain witnesses, and then denied the motion, ruling that it was "unsubstantiated" and "unsupported." The judge reiterated this conclusion in his written opinion, noting that "a review of the docket entries will clearly indicate that [defense counsel] was exhaustive in his discovery, obtained all the necessary documentation that one would anticipate . . ., assigned an investigator to investigate the factual background of the case and the witnesses, and presented a number of pre-trial motions, most of which were acted upon favorably by this court." He further recognized that the defendant had made only vague references to contacting other attorneys, and that "no appearances were filed nor was there any indication to the court directly or indirectly by any [other] counsel of his intent to appear [at] any time in the case."

The defendant renewed his motion to discharge appointed counsel the next day. The judge then repeated his determination that defense counsel "had conducted this case in a highly pro-

fessional manner and an impressive manner, and . . . that these motions for a new attorney [were] no more than a delaying tactic." The judge also denied counsel's request to withdraw, after assuring himself that counsel was prepared and would fulfil his responsibilities to the defendant to the best of his ability. We conclude that the judge's denial of the defendant's motion to discharge appointed counsel, under these particular circumstances, was proper.

A motion to discharge counsel, when made on the eve of trial, or on the day on which trial is scheduled to begin, "is a matter left to the sound discretion of the trial judge." *Commonwealth* v. *Moran,* 388 Mass. 655, 659 (1983). *Commonwealth* v. *Scott,* 360 Mass. 695, 700 (1971). *United States* v. *Morris,* 714 F.2d 669, 673 (7th Cir. 1983). *United States* v. *Welty,* 674 F.2d 185, 190 (3d Cir. 1982). See *Morris* v. *Slappy,* 461 U.S. 1, 11-12 (1983).[1] Though the defendant must be permitted to present the reasons for his dissatisfaction with his attorney, *Commonwealth* v. *Moran, supra,* the judge retains considerable power to discourage last-minute tactics which appear likely to delay the commencement of trial. *Commonwealth* v. *Jackson,* 376 Mass. 790, 796 (1978) (noting the "broad discretionary power of a court over requests for last-minute shifts in representation which threaten to delay a proceeding"). *United States* v. *Todisco,* 667 F.2d 255, 261 (2d Cir. 1981), cert. denied, 455 U.S. 906 (1982) (court should "be wary of eleventh hour requests for new counsel"). See *Morris* v. *Slappy, supra.* The right to employ counsel of one's choice, particularly when exercised on the day of trial, is, "in some circumstances, . . . subordinate to the proper administration of justice." *Commonwealth* v. *Connor,* 381 Mass. 500, 503 (1980). The defendant is "not free at his sole option to insist on a change of counsel regardless of the consequences. The general public, too, has rights. One of them is that criminal complaints or indictments

---

[1] We disagree with the defendant's assertion that a judge's discretion to deny an eleventh-hour motion to discharge counsel is substantially diminished when that motion is made before jury empanelment. See *Commonwealth* v. *Appleby,* 389 Mass. 359, 370 (1983); *Commonwealth* v. *Jackson,* 376 Mass. 790, 795-796 (1978).

be tried and disposed of with reasonable dispatch." *Commonwealth* v. *Scott, supra* at 701.

Contrary to the defendant's assertion, the judge did not fail to inquire as to the defendant's reasons for dissatisfaction with his appointed counsel. In fact, the judge displayed exemplary patience by listening to the defendant express, on three separate occasions, his charge that counsel had not made any effort to "properly prepare this case." Cf. *United States* v. *Welty, supra* at 190 (new trial ordered where record reflects "total absence of any inquiry" into reasons for the defendant's dissatisfaction with counsel). The judge concluded, after reviewing defense counsel's performance, that these charges were "dilatory" and "without substance." Moreover, the defendant's attorney represented to the judge that he was, in fact, prepared to try the case. Compare *Morris* v. *Slappy, supra* at 12 ("In the face of the unequivocal and uncontradicted statement" by defense counsel that he was "fully prepared and 'ready,'" denial of continuance does not constitute an abuse of discretion), with *Commonwealth* v. *Cavanaugh,* 371 Mass. 46 (1976) (trial judge erred in denying continuance where defense counsel himself stated that he was not adequately prepared). The record does not show how, if at all, the defendant might have been prejudiced by the alleged failure of counsel to interview certain witnesses.[2] Finally, there is no indication in the record that the

---

[2] With respect to two of the individuals the defendant requested his counsel to interview and present at trial, counsel made an apparently informed decision that neither could contribute anything to the defense. A third individual was evidently in Saskatchewan, Canada, during the time of trial, and there is no indication what his testimony might have been, had he been available. "[C]ounsel need not chase wild factual geese when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial . . . as a matter of fact and of the realities of proof, procedure, and trial tactics." *Cepulonis* v. *Ponte,* 699 F.2d 573, 575 (1st Cir. 1983). See *United States* v. *Christensen,* 732 F.2d 20, 24 (1st Cir. 1984). The defendant further argues that his dissatisfactions with counsel "were borne out by developments at trial," *Maynard* v. *Meachum,* 545 F.2d 273, 278 (1st Cir. 1976), because counsel failed to move to suppress a revolver seized from the defendant. In the absence of sufficient evidence in the record for us to determine whether counsel could have formulated a colorable motion to suppress, we will not presume that his failure to do so was negligent.

defendant had, in fact, been successful in retaining private counsel. Nor is there any support for his assertion that he was capable of retaining private counsel.

On October 21, shortly before jury empanelment, the defendant renewed his request to discharge counsel. His lawyer then stated that "the communication between me and Mr. Tuitt has irrevocably broken down and I very respectfully request this Court [to allow] me to withdraw." The judge asked whether counsel, if required to try the case, would perform to the best of his professional ability. Counsel stated that he would. The trial judge then denied the request to withdraw.

The defendant claims that it was error not to grant his motion to discharge counsel after counsel himself had acknowledged an irrevocable breakdown of communication with his client. We disagree. In certain circumstances a complete breakdown of communication might require that a judge grant a motion to discharge counsel, even when such a motion was made as late as it was here. See *Commonwealth* v. *Moran,* 17 Mass. App. Ct. 200, 204 (1983); *United States* v. *Morris,* 714 F.2d 669, 673 (7th Cir. 1983); *United States* v. *Calabro,* 467 F.2d 973, 986 (2d Cir. 1972), cert. denied, 410 U.S. 926 (1973). But the Sixth Amendment to the United States Constitution does not invariably require a "meaningful attorney-client relationship." *Morris* v. *Slappy,* 461 U.S. 1, 13-14 (1983). See *Commonwealth* v. *Appleby,* 389 Mass. 359, 365-369 (1983) (counsel's motion to withdraw properly denied despite allegations of "complete breakdown" of relationship with client). Certainly the defendant cannot rely on a breakdown of the relationship, where, as here, his own dilatory tactics caused the "communication gap." *Commonwealth* v. *Moran,* 17 Mass. App. Ct. at 206. Moreover, to provide a ground for a new trial, the breakdown of the attorney-client relationship must be such that it "leads to an apparently unjust verdict," *United States* v. *Calabro, supra,* prevents an adequate defense, *United States* v. *Morris, supra,* or threatens the defendant's right to a fair trial, *Maynard* v. *Meachum,* 545 F.2d 273, 278 (1st Cir. 1976). See *United States* v. *Cronic,* 466 U.S. 648, 657 n.21 (1984) ("appropriate [Sixth Amendment] inquiry focuses on the

adversarial process, not on the accused's relationship with his lawyer"). In this case, defense counsel represented to the judge that he was prepared, and that he would fulfil his responsibility to his client to the best of his ability. Whatever the state of the relationship between the defendant and his counsel "at one point in the proceedings, the record indicates that it did not affect the conduct of the trial as a whole." *Commonwealth* v. *Miskel,* 364 Mass. 783, 790 n.3 (1974).

2. *Denial of motion to proceed pro se.* When the motion to discharge counsel was denied, the defendant made an oral motion to proceed pro se. This motion was denied, on the ground that the defendant, while asserting his right to proceed pro se, also refused to waive his right to an attorney.[3] In these circumstances, denial of the defendant's motion was entirely appropriate.

Assertion of the Sixth Amendment right to proceed pro se in a criminal matter must be predicated upon an unequivocal waiver of one's right to counsel. *McKaskle* v. *Wiggins,* 465 U.S. 168, 184 (1984). *Faretta* v. *California,* 422 U.S. 806, 835 (1975). *Commonwealth* v. *Cavanaugh,* 371 Mass. 46, 53 (1976). *Commonwealth* v. *Chapman,* 8 Mass. App. Ct. 260, 265 (1979). "[A] defendant obviously cannot enjoy both rights at trial." *Brown* v. *Wainwright,* 665 F.2d 607, 610 (5th Cir. 1982). *United States* v. *Weisz,* 718 F.2d 413, 425-426 & n.72 (D.C. Cir. 1983), cert. denied, 465 U.S. 1027 (1984). Instead, the right to represent oneself and the right to counsel are available only in the "disjunctive." *United States* v. *Halbert,* 640 F.2d 1000,1009 (9th Cir. 1981). This principle ensures that, if a defendant does effectively elect to proceed pro se, he cannot later "turn about and urge that he was improperly denied

---

[3] The following exchange was representative:

THE JUDGE: "If you waive [your right to an] attorney, you may proceed pro se . . . ."

THE DEFENDANT: "I'm not waiving any of my rights. I do not want this attorney to represent me and I do want to proceed pro se, but I'm not going to waive my rights to counsel of my choice."

THE JUDGE: "If you will not waive counsel for the purpose of this trial, then I will deny your motion to proceed pro se. The case will proceed with [appointed counsel] being your lawyer."

counsel." *Meeks* v. *Craven,* 482 F.2d 465, 467 (9th Cir. 1973). Because this defendant clearly and unequivocally *refused* to waive his right to counsel, he is not entitled to exercise his right to represent himself.

The defendant, relying on *Commonwealth* v. *Appleby,* 389 Mass. 359, 366-367 (1983), contends that "a refusal without good cause to proceed with able, appointed counsel is a 'voluntary' waiver." *Id.,* quoting *Maynard* v. *Meachum, supra* at 278. This is generally true, except in those situations where refusal to proceed with counsel is accompanied by an explicit refusal to waive one's right to counsel.[4] In short, we decline to accept the defendant's contention that he is somehow entitled both to waive his right to counsel for the purpose of proceeding pro se, but at the same time to retain his right to counsel for the purpose of challenging the denial of his motion to discharge counsel.

3. *Denial of motion for a mistrial.* A police detective who had participated in a photographic identification of the defendant testified that, before showing the photographs to an eyewitness, he had "picked them out of [his] desk." The defendant contends that this statement must have suggested to the jury that these photographs were mugshots, and thus that the defendant had a prior criminal record. The defendant argues that the judge erred in denying his motion for a mistrial made shortly after the detective made this remark.[5]

The detective's reference to the source of the photographic display did not warrant a mistrial. "[J]udges and prosecutors

---

[4] The defendant argues that an explicit waiver of the right to counsel is not required before exercise of the right to proceed pro se, in part on the basis of Mass. R. Crim. P. 8 (e), 378 Mass. 857 (1979). This rule would apparently not preclude a defendant who refuses to sign a waiver card from exercising his right to proceed pro se. See *Commonwealth* v. *Appleby, supra* at 368 (refusal "to sign a waiver form is not conclusive of a lack of waiver"); *Commonwealth* v. *Cavanaugh,* 371 Mass. 46, 54 (1976); *Commonwealth* v. *Moran,* 17 Mass. App. Ct. 200, 207 (1983). This is not a case where there is merely a refusal to sign a waiver card. Instead, the defendant emphatically and expressly indicated his refusal to waive his right to counsel. See *Commonwealth* v. *Cavanaugh, supra.* Such a refusal is wholly inconsistent with the assertion of one's right to proceed pro se.

[5] No request was ever made that the testimony be struck.

[should] use reasonable means to avoid calling the jury's attention to the source of the photographs used to identify the defendant." *Commonwealth* v. *Blaney,* 387 Mass. 628, 638 (1982). "[P]olice witnesses . . . should be at great pains to avoid such testimony . . . ." *Commonwealth* v. *Gibson,* 357 Mass. 45, 48, cert. denied, 400 U.S. 837 (1970). Nonetheless, even assuming that the jury had inferred that the photographs at issue were mugshots, we have "never held . . . that the admission in evidence of unsevered double-pose mug shots is sufficient, standing alone, to constitute reversible error." *Commonwealth* v. *Blaney, supra.* Here the judge promptly gave a limiting instruction to the jury that "[a]s to the photographs, of course, you're not to speculate at all as to where they came from." Because we assume that the jury understood and followed this instruction, *id.* at 639; *Commonwealth* v. *Jackson,* 384 Mass. 572, 579 (1981), denial of the defendant's motion for a mistrial on the basis of the detective's remarks was not error. See *Commonwealth* v. *Gibson, supra* at 49; *Commonwealth* v. *Gerald,* 356 Mass. 386, 388 (1969).

4. *Sufficiency of the evidence for the firearm conviction.* The defendant claims that insufficient evidence was adduced to convict him of carrying a firearm without a permit, under G. L. c. 269, § 10 (*a*). This issue was not raised below. "In the absence of a proper preservation of an issue for appellate review, the applicable standard is whether there existed a 'substantial risk of a miscarriage of justice.'" *Commonwealth* v. *Moffett,* 383 Mass. 201, 211 (1981), quoting *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967).

The evidence adduced at trial was clearly sufficient to support a finding that the defendant had violated G. L. c. 269, § 10 (*a*). The defendant claims that there was no evidence that the gun met the definitional prerequisites of G. L. c. 140, § 121,[6] and therefore that the Commonwealth did not meet its burden of proving the essential elements of a firearm violation. We

[6] General Laws c. 140, § 121, as amended through St. 1983, c. 516, § 1, provides that "'firearm' shall mean a pistol, revolver or other weapon of any description loaded or unloaded, from which a shot or bullet can be discharged."

disagree. The victim testified that a man, later identified as the defendant, had threatened him with a gun and said, "Don't get killed over anybody else's money." Moreover, the gun later seized from the defendant, and introduced as an exhibit, was identified by both the victim and an eyewitness as the one used in the robbery. Given this evidence, the jury were warranted in finding that the gun used in the robbery was a "weapon . . . from which a shot or bullet can be discharged." G. L. c. 140, § 121. See *Commonwealth* v. *Sperrazza,* 372 Mass. 667, 670 (1977); *Commonwealth* v. *Fancy,* 349 Mass. 196, 204 (1965). There is no need for the Commonwealth to present expert testimony to the effect that the definitional prerequisites for a "firearm" have been met. *Id. Commonwealth* v. *Paiva,* 16 Mass. App. Ct. 561, 564 (1983). Nor is there any need for the Commonwealth to present evidence to show that the defendant did not have a license to carry this firearm. *Commonwealth* v. *Jones,* 372 Mass. 403 (1977). Instead, "the burden is on the defendant" to come forward with evidence of a license. *Id.* at 406.[7]

5. *Prosecutor's opening and closing statements.* The defendant challenges as improper certain assertions made by the prosecutor in his opening and closing statements. Since this issue has also been raised for the first time on appeal, we review it only to determine whether there is "a substantial risk of a miscarriage of justice." *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 271 (1982). *Commonwealth* v. *Fitzgerald,* 376 Mass. 402, 416 (1978).

First of all, the defendant argues that, since no evidence of a "manhunt" was brought forth at trial, the prosecutor's reference to a "manhunt" in his opening statement requires reversal. This claim is meritless. "[T]here is no indication in the record that the statements . . . were made unreasonably or in bad faith,

_____

[7] The defendant also argues that it was error to admit in evidence, without a limiting instruction, the gun seized from the defendant on July 6, since it may not have been the same gun used in the June 14 robbery. This claim is meritless. Certainly the testimony "raised a sufficient likelihood" that the gun introduced at trial was in fact the one used during the robbery. *Commonwealth* v. *Vanetzian,* 350 Mass. 491, 496 (1966).

and neither unreasonableness nor bad faith are to be presumed." *Commonwealth* v. *Errington,* 390 Mass. 875, 883 (1984).[8] Nor, "in light of the judge's instruction to the jury and the evidence at trial," *Commonwealth* v. *Fitzgerald, supra* at 416, is there any indication that this remark was so prejudicial as to require reversal of the convictions. The judge twice admonished the jury that the opening and closing statements of the prosecutor were not evidence, but, instead, "a road map where the attorney tells you where he is starting from and where he hopes to end up with the evidence." See *id.*; *Commonwealth* v. *Fazio,* 375 Mass. 451, 457-458 (1978). Moreover, we find it unlikely, in light of the substantial evidence of guilt brought forth at the trial, that the defendant was prejudiced by this remark. The word "manhunt" implies little more than the unsurprising fact that the police were looking for a potentially dangerous suspect in an armed robbery.

The defendant also claims that the prosecutor wrongfully stated his personal belief in the strength of the Commonwealth's case.[9] We have already made it clear that "we strongly disapprove" of remarks by a prosecutor to the effect that evidence of guilt is overwhelming. *Commonwealth* v. *Daigle,* 379 Mass. 541, 550 (1980). However, "appraising the closing speech as a whole," as well as the judge's instructions to the jury with respect to the closing arguments, *Commonwealth* v. *St. Pierre,* 377 Mass. 650, 665 (1979), we are confident that this prosecutorial impropriety has not created a substantial risk of a miscarriage of justice, and that a new trial is not required. See *Commonwealth* v. *Daigle, supra.* Nothing in the prosecutor's remarks could have affected the outcome of the trial. See *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 539 (1971). Cf. *Commonwealth* v. *Smith,* 387 Mass. 900, 912 (1983) (new

---

[8] There was, in fact, testimony that police officers, between the date of the robbery and the arrest, "were to be on the lookout" for the defendant.

[9] Specifically, the defendant challenges the following statement: "The evidence is overwhelming, and I don't say that lightly . . . . We're confident on behalf of the Commonwealth that you will speak [the] truth and that this man, Michael Tuitt, is guilty as charged."

trial ordered in light of "cumulative effect of prosecutorial errors during the trial and the closing argument").

6. *Habitual offender statute*. The defendant claims that the judge erred in determining that application of the habitual offender statute required imposition of a life sentence. He also asserts that the habitual offender statute violates various provisions of the State and Federal Constitutions. Both these arguments are meritless.

In 1970, the defendant was convicted of breaking and entering in the daytime with intent to commit a felony, and sentenced to three to five years at the Massachusetts Correctional Institution, Walpole. In 1978, he pleaded guilty to armed robbery, assault by means of a dangerous weapon, and assault and battery by means of a dangerous weapon, and received for each offense a concurrent sentence of six to nine years at M.C.I., Walpole.[10] In these circumstances, after his convictions in the instant case, he became subject to sentencing under the habitual offender statute, G. L. c. 279, § 25, which requires that "an habitual criminal . . . be punished by imprisonment in the state prison for the maximum term provided by law as a penalty for the felony for which he is then to be sentenced."[11] Since G. L. c. 265, § 17, as appearing in St. 1952, c. 406, § 1,

---

[10] The defendant also pleaded guilty, in 1978, to possession of a sawed-off shotgun, and to carrying a firearm in a vehicle without lawful authority. He received three to five year sentences at M.C.I., Walpole, on these two offenses, to be served concurrently with the six to nine year sentences imposed on the other 1978 offenses.

[11] General Laws c. 279, § 25, provides as follows: "Whoever has been twice convicted of crime and sentenced and committed to prison in this or another state, or once in this and once or more in another state, for terms of not less than three years each, and does not show that he has been pardoned for either crime on the ground that he was innocent, shall, upon conviction of a felony, be considered an habitual criminal and be punished by imprisonment in the state prison for the maximum term provided by law as a penalty for the felony for which he is then to be sentenced." The defendant argues that the statute requires that one actually serve at least three years in prison on each prior felony conviction before one can be sentenced under the habitual offender statute. We disagree. A defendant must have been sentenced to at least three years on each prior felony, but release on parole before three years have been served will not defeat application of the statute.

authorizes a sentence of "imprisonment . . . for life or for any term of years" for armed robbery, the judge was required, under G. L. c. 265, § 17, to impose a life sentence on this defendant.

The defendant contends, under *Aldoupolis* v. *Commonwealth,* 386 Mass. 260, 267, cert. denied, 459 U.S. 864 (1982), that the judge could have suspended all or part of the sentence required by the habitual offender statute, and thus that the judge erred in stating that he was required to impose a life sentence. We held in *Aldoupolis* that "the prohibition against suspension of execution of sentences found in G. L. c. 279, § 1, is inapplicable to crimes that carry the possibility of life imprisonment or imprisonment for a term of years." *Id.*[12] As the defendant notes, armed robbery is such a crime, and had the defendant been sentenced only for armed robbery, the sentence could have been suspended. However, the defendant was sentenced under the habitual offender statute, which required that he "be punished by imprisonment . . . *for the maximum term provided by law*" (emphasis added). An explicit legislative determination that "the maximum term provided by law" must be imposed on habitual offenders precludes the possibility that the judge could have suspended all or any portion of the defendant's life sentence.[13]

We also reject the defendant's claim that his life sentence violates both the Eighth Amendment to the United States Constitution and art. 26 of the Declaration of Rights, which prohibit the imposition of cruel and unusual punishments. We have repeatedly affirmed the ample discretion afforded to the Legislature in determining the appropriate punishment for particular

---

[12] According to G. L. c. 279, § 1, as amended through St. 1975, c. 347, "[w]hen a person convicted before a court is sentenced to imprisonment, the court may direct that the execution of the sentence, or any part thereof, be suspended and that he be placed on probation for such time and on such terms and conditions as it shall fix . . . . The provisions of this section shall not permit the suspension of the execution of the sentence of a person convicted of a crime punishable by death or imprisonment for life."

[13] The issue of parole is not properly before us, and we do not here suggest that parole is unavailable for one sentenced under the habitual offender statute. See G. L. c. 127, §§ 133-133B.

criminal offenses. *Cepulonis* v. *Commonwealth,* 384 Mass. 495, 497 (1981), appeal dismissed, 455 U.S. 931 (1982). "[T]he Legislature's power to proscribe conduct and to prescribe penalties is necessarily broad and its judgment is to be accorded due respect." *Opinions of the Justices,* 378 Mass. 822, 830 (1979). *Commonwealth* v. *Jackson,* 369 Mass. 904, 909 (1976). See *Weems* v. *United States,* 217 U.S. 349, 379 (1910). The sentence is not rendered unconstitutionally excessive simply because the trial judge remarked that he would not have imposed a life term if the statute had not required it. There is no constitutional right to individually tailored sentencing. *Commonwealth* v. *Diatchenko,* 387 Mass. 718, 722-723 (1982). *Opinions of the Justices, supra* at 832-833. *Commonwealth* v. *Jackson,* 369 Mass. 904, 914 n.5, 919-920 (1976).[14] Nor does this case even remotely resemble that before the Supreme Court in *Solem* v. *Helm,* 463 U.S. 277 (1983), where a life sentence without the possibility of parole, imposed upon a seven time felon, was struck down as cruel and unusual punishment. This defendant has twice been convicted of armed robbery, a crime far more serious than any of the offenses for which Helm was incarcerated. Moreover, the defendant will apparently be eligible for parole. See note 13, *supra.*[15]

*Judgments affirmed.*

---

[14] The defendant's claim that the mandatory sentencing provision of G. L. c. 279, § 25, violates the separation of powers is meritless. See *Commonwealth* v. *Jackson, supra* at 920-925. The defendant also argues that "[t]he science of penology has evolved greatly" since the enactment of the habitual offender statute, and that this evolution suggests a trend away from mandatory sentencing. "Although we acknowledge the serious debate as to the effectiveness of mandatory sentences, it is not our function to inquire as to 'the expediency, wisdom or necessity of the legislative judgment . . . .'" *Commonwealth* v. *Jackson, supra* at 919, quoting *Slome* v. *Chief of Police of Fitchburg,* 304 Mass. 187, 189 (1939).

[15] With respect to the position of the dissenting opinion that the defendant's request to proceed pro se was wrongly denied, we note that this case is highly susceptible to an inference of "manipulative behavior," and that this inference is strengthened by the defendant's ample prior experience with the criminal justice system. See *Commonwealth* v. *Connor,* 381 Mass. 500, 506 n.6 (1980).

O'CONNOR, J. (dissenting). The court today holds that a defendant may not "waive his right to counsel for the purpose of proceeding pro se, but at the same time . . . retain his right to counsel for the purpose of challenging the denial of his motion to discharge counsel." *Ante* at 808. By so holding, I believe that the court impermissibly burdens the defendant's right to represent himself in criminal proceedings, which is guaranteed under both art. 12 of the Declaration of Rights of the Massachusetts Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution. See *Faretta* v. *California,* 422 U.S. 806, 818-832 (1975); *Commonwealth* v. *Mott,* 2 Mass. App. Ct. 47, 51 (1974).

This is not a case where the defendant has made an ambiguous request so that he may proceed pro se and later "turn about and urge that he was improperly denied counsel." *Ante* at 807-808, quoting *Meeks* v. *Craven,* 482 F.2d 465, 467 (9th Cir. 1973). The defendant, while asserting his right to represent himself, did refuse to use the language required by the trial judge, perhaps believing that if he stated that he "waived counsel" he would thereby waive his right to appeal the denial of his motion to "dismiss court appointed attorney" which, in substance, included a motion for leave to obtain new counsel. Such a belief would not have been unreasonable. We have never held that the use of particular words or phrases is essential to the exercise of the right to proceed pro se. As the court acknowledges, we have held that a defendant who refuses, without good cause, to proceed with able, appointed counsel has validly waived his right to counsel. *Ante* at 808. See *Commonwealth* v. *Appleby,* 389 Mass. 359, 366-367 (1983). The court now holds, however, without citation to any authority, that this is not true when "refusal to proceed with counsel is accompanied by an explicit refusal to waive one's right to counsel." *Ante* at 808.

The court relies on a number of cases which stand for the proposition that a defendant's right to represent himself may be exercised only if the defendant "unequivocally" waives his right to counsel, and holds that the defendant did not make such an unequivocal waiver. In each of the cited cases in which

the court held that there was no unequivocal waiver, however, the defendant's request was ambiguous, such that the trial judge could not reasonably conclude that the defendant had waived his right to counsel.

In this case, there was nothing "equivocal" about the defendant's assertion of his desire to represent himself, given the judge's denial of his motion to discharge counsel. While the defendant made it clear that he continued to insist that he had a right to obtain counsel of his choice, he made it equally clear that, presented with the choice of proceeding pro se or proceeding with what he perceived to be unprepared counsel, he preferred to represent himself.[1] The trial judge's ruling on the

---

[1] Before the start of his trial, and after the trial judge denied his motion for leave to obtain new counsel, the defendant reiterated his dissatisfaction with counsel. The following exchange took place:

THE DEFENDANT: "[Y]ou are making me go forward with [counsel], even though [counsel], at my insistence, has not spoken to these witnesses, has not gotten in touch with them to prepare a defense for me. I just as soon go pro se and I ask for a three-week continuance to get this particular witness, and an opportunity to get my own witnesses . . . ."

. . .

THE JUDGE: "Your motion for a continuance, again, unsupported by anything other than the blanket motion for a continuance is denied."

THE DEFENDANT: "Your Honor, I'd like to go forward pro se then, because he's not prepared to take care of this case. I would like to go forward pro se and dispense with him as my attorney, and I don't want that to be construed as a waiver of attorney because I asked to have my own attorney, somebody that could look after my own interests, and it doesn't appear [counsel] is looking after my interests very well, so, I just as soon go pro se."

. . .

THE JUDGE: "Mr. Tuitt, you have a Constitutional right to proceed pro se —"

THE DEFENDANT: "I would like to proceed pro se, then."

. . .

THE JUDGE: "[Y]ou understand what the effect is of your waiving an attorney?"

THE DEFENDANT: "I have not waived an attorney, your Honor, I do not want this man to represent me, and I don't want my going pro se to be construed as me waiving my right to counsel. I do want counsel. I am not a learned person in the law, I want counsel but this man is not prepared to represent me."

THE JUDGE: "You know what it means to go pro se, without an attorney representing you?"

motion to proceed pro se shows that the judge understood exactly what the defendant wanted to do. In a memorandum denying that motion, the judge stated: "[The defendant] indicated that he had no intent to waive his right to an attorney but that if he could not have attorneys of his choosing, then he would prefer to represent himself in that he did not want [appointed counsel] to represent him."

The majority also relies on *United States* v. *Halbert,* 640 F.2d 1000 (9th Cir. 1981), stating that the right to counsel and the right to proceed pro se are only available in the disjunctive. *Ante* at 807. *Halbert* involved a defendant who requested that he be allowed to represent himself as cocounsel with his retained counsel. *Id.* at 1009. There is no constitutional right to such "hybrid representation." *Commonwealth* v. *Brown,* 378 Mass. 165, 176 (1979). *United States* v. *Wolfish,* 525 F.2d 457, 463 (2d Cir. 1975), cert. denied, 423 U.S. 1059 (1976). K.B. Smith, Criminal Practice and Procedure § 991 (2d ed. 1983). In this case, however, the defendant did not attempt to exercise simultaneously his right to be represented by counsel and his right to represent himself. Rather, he asserted that he had a right

---

THE DEFENDANT: "Yes."

The following day, before the jury had been empaneled, the defendant again objected to continued representation by appointed counsel.

THE DEFENDANT: "I would like to have the record show that I do not want this man to represent me. I do not want a Court-appointed attorney forced upon me against my will. I am able to retain my own counsel. This is not a delaying tactic."

THE JUDGE: "Mr. Tuitt, we've been over that. Please. I have denied your motion. . . . [A]s I understand it, you have requested to proceed pro se. Is that correct, Mr. Tuitt? You want to proceed pro se on your own, without a lawyer?"

THE DEFENDANT: "Without this attorney. I want an attorney of my own choice. . . . I cannot get effective assistance of counsel. I do not want him and I do not want this to be construed as a waiver."

. . .

THE JUDGE: "If you waive attorney, you may proceed pro se and I will not force anybody upon you."

THE DEFENDANT: "I'm not waiving any of my rights. I do not want this attorney to represent me and I do want to proceed pro se, but I'm not going to waive my rights to counsel of my choice."

THE JUDGE: "If you will not waive counsel for the purpose of this trial, then I will deny your motion to proceed pro se. . . ."

to counsel of his choice, and, alternatively, if the judge would not recognize that right, he had the right to represent himself. As such, *Halbert* is inapposite.

I agree with the court that the trial judge correctly held that the defendant was not entitled to obtain new counsel. Nevertheless, the defendant had a right to appeal that ruling. The dialogue set forth in the margin strongly suggests that he believed that by stating that he waived his right to counsel he would effectively waive his objection to the judge's denial of his motion to discharge counsel. The judge said nothing that would discourage that belief. "A criminal defendant may be asked . . . to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive." *Maynard* v. *Meachum,* 545 F.2d 273, 278 (1st Cir. 1976). The trial judge properly could have required the defendant to choose between proceeding pro se and proceeding with his appointed counsel. *Commonwealth* v. *Appleby, supra* at 368. However, the judge could not constitutionally condition the right to proceed pro se on the defendant's making a statement that he could reasonably have believed might constitute a waiver of his right to appeal the judge's denial of his motion to discharge counsel and obtain new counsel.

It is true that "[a] trial judge always has a problem when a defendant waives his right to counsel and asserts his right to try his own case. Later, . . . the defendant is quite likely to mount a collateral attack upon his trial or plea, claiming either that he did not understand what he was doing or that the court should have forced counsel upon him." *Meeks* v. *Craven, supra* at 467. I do not agree that the record permits an inference of "manipulative behavior," see *ante* at 814 n.15, but, in any event, that is an irrelevant consideration. Concern for the possible manipulations of criminal defendants does not justify limiting a defendant's constitutionally guaranteed right to represent himself, if, as here, he has clearly and unambiguously insisted on that right. I would reverse the defendant's convictions and order a new trial.